UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- -X
SOCIALRYSE LLC, d/b/a BHBIGFLUCE RECORDS,    : Civil No. 1:26-cv-03407-JGK

                      Plaintiff,    :    SECOND AMENDED
    -against              COMPLAINT    :
                                :

YOUTUBE LLC and GOOGLE LLC,

                         :    [Jury Trial Demanded]
             Defendants.
    :
-------------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This action arises from Defendants' wrongful conduct toward Plaintiff SocialRyse LLC concerning Plaintiff's 2023 participation in Defendants' Content ID monetization system through authorized distributor Venice Music. In May 2023, Plaintiff uploaded several original sound recordings through Venice Music's Content ID portal. Those recordings were accepted into Defendants' Content ID system and began generating automated monetization revenue. In July and August 2023, Venice Music informed Plaintiff that Defendants had applied backend enforcement designations—"Invalid reference" and "Potential violation of YouTube monetization policy"—to Plaintiff's reference files and stated that distributors face penalties if they monetize content that Defendants designate as ineligible. Plaintiff holds the exclusive rights necessary for Content ID participation, enrollment, and monetization of the designated sound recordings. No entity has disputed Plaintiff's rights in those recordings. Defendants have not communicated to Plaintiff or to Venice Music any published Content ID rule applicable to rights holders that Plaintiff's content violated. After review of written information and materials provided by Plaintiff, including Plaintiff's ownership confirmations, explanatory responses, and the TTMedia promotional agreement, Defendants reactivated monetization on Plaintiff's releases on November

14, 2023. In the months following that reactivation, Plaintiff's Venice Music account—which had generated $9,225.14 in August 2023—generated less than $1.00 per month in every month from June 2024 through December 2025 (19 consecutive months), with total revenue under $2.00 across calendar year 2025. Plaintiff brings this action to recover for, and to enjoin, Defendants' specific conduct in 2023 and thereafter directed at Plaintiff's Venice Music Content ID Materials and the associated reference files, audio fingerprints, ISRCs, UPCs, and asset identifiers delivered through and administered with Venice Music under Plaintiff's BHBIGFLUCE Records account. Plaintiff does not in this action seek damages or relief for conduct occurring in any pre-May-2023 distributor relationship. Plaintiff asserts state-law claims for tortious interference with prospective economic advantage, fraud, negligent misrepresentation, trade libel, promissory estoppel, and unfair competition, and seeks injunctive and declaratory relief. Plaintiff has no direct appeal, no published review standard, and no mechanism through which to obtain review of the continuing restrictions on Plaintiff's Venice Music Content ID Materials.

## PARTIES

2.      Plaintiff SocialRyse LLC, doing business as BHBIGFLUCE Records ("SocialRyse" or "Plaintiff"), is a New York limited liability company with its principal place of business in Brooklyn, New York. Its sole member is Ralph Cohen, a citizen of New York. During the events described in this Complaint, Plaintiff operated under the trade name BHBIGFLUCE Records in its relationship with Venice Music.

3.      Defendant YouTube LLC ("YouTube") is a Delaware limited liability company with its principal place of business in San Bruno, California. Upon information and belief, YouTube LLC is a subsidiary of Google LLC.

4.      Defendant Google LLC ("Google") is a Delaware limited liability company with its principal place of business in Mountain View, California. Upon information and belief, Google LLC is wholly owned by XXVI Holdings Inc., a Delaware corporation with its principal place of business in California. Upon information and belief, XXVI Holdings Inc. is wholly owned, directly or indirectly, by Alphabet Inc., a Delaware corporation with its principal place of business in California. As limited liability companies, YouTube LLC and Google LLC take the citizenship of their members; accordingly, YouTube LLC and Google LLC are each citizens of Delaware and California, and neither is a citizen of New York, for purposes of 28 U.S.C. § 1332.

5.      Google owns and controls YouTube. Google and YouTube are referred to collectively herein as "Defendants."

5A.     Defendant Google LLC's role with respect to the Content ID and Copyright Management systems at issue in this action extended beyond passive ownership of Defendant YouTube LLC. As reflected in Venice Music's August 16, 2023 written communication to Plaintiff (Ex. B), Venice Music's legal department attributed the operative eligibility standards at issue to "Google's current Copyright Management eligibility criteria," and identified "Google's" Copyright Management function as the source of the enforcement determinations applied to Plaintiff's reference files. Upon information and belief, Google LLC operates, maintains, controls, or materially participates in the policies, backend enforcement infrastructure, eligibility criteria, distributor-facing systems, review-routing determinations, monetization controls, and revenue-allocation functions of the Content ID and Copyright Management systems described herein, and the challenged designations, monetization restrictions, and distributor penalty pressure alleged in this Complaint were implemented through systems, personnel, policies, or operational structures controlled in whole or in part by Google LLC.

## JURISDICTION AND VENUE

6.      This Court has diversity jurisdiction under 28 U.S.C. § 1332. There is complete diversity of citizenship between Plaintiff (New York) and Defendants (California/Delaware), and the amount in controversy exceeds $75,000 exclusive of interest and costs. The amount in controversy is comprised of, without limitation, (i) lost monetization revenue measured against Plaintiff's pre-enforcement August 2023 baseline of $9,225.14, accruing over 19+ consecutive months of near-zero revenue and continuing daily; (ii) lost goodwill and impaired distributor relationships; and (iii) the value of the injunctive and declaratory relief sought.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred here, Plaintiff resides and suffered injury here, and Defendants transact substantial business here.

8.      This Court has personal jurisdiction over Defendants under N.Y. C.P.L.R. § 302(a)(1)-(3) and the Due Process Clause of the Fourteenth Amendment. Defendants transact substantial business in New York, derive substantial revenue from New York, and have purposefully availed themselves of the privilege of conducting activities in New York. Plaintiff is a New York limited liability company with its principal place of business in New York, and Plaintiff's injuries from Defendants' conduct have been suffered in New York. Defendants' enforcement designations, as alleged herein, were directed at a New York rights holder and affected Plaintiff's New York-based business operations, including Plaintiff's revenue, distributor relationships, and catalog administration. The exercise of personal jurisdiction over Defendants in this District is consistent with traditional notions of fair play and substantial justice.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Business and Original Music Catalog

9.      Plaintiff SocialRyse LLC is a New York rights holder that owns and controls original sound recordings released under various artist stage names. During the events described in this Complaint, Plaintiff operated its Venice Music distributor account under the trade name BHBIGFLUCE Records. The sound recordings delivered through that account were original copyrighted works owned in their entirety by Plaintiff. At the time of delivery to Venice Music, and at all times since, Plaintiff has held the exclusive rights necessary for Content ID enrollment and monetization of each such recording.

10.     Plaintiff's copyrighted sound recordings are enrolled in Defendants' Content ID system through Plaintiff's authorized distributor, Venice Music. When a user-uploaded video on YouTube contains a matching recording, Defendants' Content ID system automatically detects the match and allocates monetization revenue to Plaintiff as the identified rights holder, regardless of the identity of the uploader or the origin of the video. Plaintiff's recordings have appeared in user-uploaded videos posted by a range of third-party YouTube channels and creators that Plaintiff does not own or control, some of which have no contractual or promotional relationship with Plaintiff at all. Regardless of how any third-party uploader obtained, selected, or used Plaintiff's music, Plaintiff did not own or control those channels, did not control the non-music content of any third-party video incorporating its music, and did not control the upload decisions of any third-party uploader. Any revenue received by Plaintiff through Content ID is generated by Defendants' automated detection of Plaintiff's copyrighted recordings in user-uploaded videos, not by Plaintiff's ownership, operation, control, or monetization of any user-uploaded videos in which Plaintiff's recordings appeared. As used herein, "Plaintiff's Venice Music Content ID Materials" means Plaintiff's sound recordings, reference files, audio fingerprints, Content ID assets, claims, releases, metadata, ISRCs, UPCs, asset identifiers, Plaintiff's elected match-policy and

monetization-policy configurations, the SocialRyse LLC and BHBIGFLUCE Records names and any associated account names, email addresses, and other associated account-level or catalog-level identifiers used to identify, register, operate, or tag Plaintiff's Content ID account, reference files, or releases, but only as delivered, maintained, administered, or monetized through Venice Music under Plaintiff's BHBIGFLUCE Records label account.

### B. Defendants' Content ID System

11.    Defendants' Content ID system performs two functions: copyright detection and monetization/revenue allocation. Through Content ID, advertising and subscription revenue from user-uploaded videos is allocated to rights holders based on detected usage of their copyrighted sound recordings. As used herein, references to Plaintiff's recordings, reference files, assets, or Content ID Materials "claiming," "generating claims," or "claim activity" mean that Defendants' Content ID system detected Plaintiff's sound recordings in user-uploaded videos and generated, routed, reviewed, monetized, withheld, or failed to generate claims associated with those matches.

12.    According to Defendants' publicly reported data, YouTube processed over 2.2 billion Content ID claims in 2024. Rights holders chose to monetize more than 90% of Content ID claims rather than block the underlying content. Content ID has paid out over $12 billion cumulatively to rights holders, including approximately $3 billion in 2024 alone. In Defendants' published 2024 Content ID Transparency Report, Defendants further report that over 99% of Content ID claims made in 2024 were made through Defendants' automated detection system, with manual claiming by Content ID partners representing fewer than 0.5% of total claims.

13.    Content ID's "monetize" policy operates as an automated revenue-allocation mechanism. When a rights holder sets its Content ID policy to "monetize," the rights holder receives proportional revenue allocation from the Content ID system when its copyrighted content

is detected in creator-uploaded videos. Authorized distributors such as Venice Music, DistroKid, TuneCore, and CD Baby default to "monetize" policy for Content ID claims.

14.    Defendants have publicly stated that Content ID functions to ensure that rights holders "can be allocated revenue proportional to the share they are owed."

***C. Structural Asymmetry Between Major-Label and Independent Rights Holders***

15.    Major-label rights holders typically access Defendants' Content ID system through their own Content Management System (CMS) accounts pursuant to direct contractual arrangements with Defendants. Independent rights holders such as Plaintiff access Content ID exclusively through authorized third-party distributors and do not have direct contractual relationships with Defendants governing Content ID participation.

16.    Major-label rights holders with direct CMS access possess tools unavailable to independent rights holders, including manual claiming and claim review tools, direct reference file management, the ability to contest enforcement designations through Defendants' internal processes, and direct communication channels with Defendants' Copyright Management personnel and related enforcement and platform-relations functions. Independent rights holders have no such direct access.

17.    Independent rights holders, including Plaintiff, depend upon authorized distributor intermediaries who are themselves subject to Defendants' enforcement designations and Defendants' penalty structure. This structural asymmetry means that Defendants' enforcement designations against independent rights holders operate through a mechanism from which those rights holders have no meaningful direct recourse, while major-label rights holders engaged in materially identical monetization activity primarily access Defendants' system on direct contractual terms with direct review and appeal mechanisms available.

***D. Plaintiff's Enrollment With Venice Music and Initial Monetization (May–July 2023)***

18.     In or about May 2023, Plaintiff submitted several original sound recordings through Venice Music's (Venice Innovation Labs Inc.) portal for Content ID monetization, under Plaintiff's trade name BHBIGFLUCE Records. The recordings included works released under multiple artist stage names within Plaintiff's catalog, including (among others) "Zephyr" (including the album Louder Actions and the individual tracks "Clouds," "Believe," and "Balloon"), "Bryan Stark" (including the track "Quarantine"), and "Chester Thompson" (including the tracks "Beautiful Fireworks" and "Forsaken Mic"). At the time of the May 2023 delivery to Venice Music, and at all times since, Plaintiff has held the exclusive rights necessary for Content ID participation, enrollment, and monetization of each such recording, and no entity has disputed Plaintiff's rights in any such recording. Plaintiff held the exclusive rights necessary to enroll those sound recordings and associated compositions in Content ID and to receive monetization revenue allocated by Defendants' Content ID system.

19.     Defendants' Content ID system identifies reference files by audio fingerprint and retains asset-level data, including audio fingerprints, ISRCs, UPCs, track titles, artist names, asset identifiers, and distributor-account metadata. At the time Defendants applied the 2023 enforcement designations to Plaintiff's reference files, Defendants' systems contained records sufficient to identify the specific reference files designated, including their audio fingerprints, ISRCs, UPCs, asset identifiers, and associated Venice Music distributor-account metadata. Those records also identified the Venice Music account through which the recordings were delivered and the BHBIGFLUCE Records account associated with those deliveries. The screenshots Defendants transmitted to Venice Music in connection with the 2023 designations, reproduced in Exhibit A, reflect Defendants' asset-level identification of Plaintiff's specific reference files. Plaintiff does

not in this action rely on any pre-May-2023 enrollment of any recording as a basis for liability or damages.

20.    Upon upload, Plaintiff's recordings were accepted into Venice Music's Content ID system and began generating automated monetization revenue through Defendants' platform. During the initial accounting periods of Plaintiff's Venice Music relationship, Plaintiff's account generated $9,225.14 in the August 2023 accounting period.

***E. Defendants' Enforcement Designations and Venice Music Deactivation (July–August 2023)***

21.    On or about July 6, 2023, Venice Music sent Plaintiff a written communication titled "Unauthorized Activity Detected: Louder Actions," stating that "music platforms" had flagged Plaintiff's releases for "Potential copyright infringement on delivered sound recordings" and "Ineligible content for monetization on YouTube Content ID." Venice Music requested that Plaintiff issue an immediate takedown of the flagged content from YouTube Music and YouTube Content ID and stated that failure to comply may subject the account to "account termination and full catalog removal." (Ex. A.)

22.    Plaintiff responded on July 6, 2023, asserting 100% ownership of the music and requesting specific information regarding the claimed issues. Venice Music did not respond. Plaintiff sent a follow-up communication on July 10, 2023. Venice Music again did not respond. On July 13, 2023, Plaintiff sent a third communication providing Venice Music with links to original music videos produced by Plaintiff.

23.    Venice Music thereafter responded, acknowledging Plaintiff's ownership but stating that the issue flagged by YouTube concerned the Zephyr Louder Actions album and its "eligibility" to monetize on YouTube Content ID. Venice Music quoted Defendants' language: "Our systems detected that it is likely that this reference is being used to circumvent our monetization eligibility requirements by using Content ID to monetize content that is ineligible for

monetization." Venice Music provided Plaintiff with a screenshot showing Defendants' backend "Invalid reference" designation applied to Plaintiff's Clouds and Balloon reference files, with "Potential violation of YouTube monetization policy" displayed as the stated sub-category under that designation. (Ex. A.)

24. On or about August 16, 2023, Venice Music informed Plaintiff that Defendants had "deactivated Content ID on Zephyr releases due to repeated invalid Content ID claims due to suspicious reference segments in the sound recordings that do not meet Content ID eligibility requirements and circumventing Content ID monetization policy." (Ex. B.) Plaintiff responded, stating that all Zephyr music was original, that Plaintiff did not own or control any of the channels that used its music in their videos, and requesting reactivation of the Zephyr reference files.

25. Plaintiff's counsel thereafter sent a written demand to Venice Music's legal department for reactivation of Content ID references for the tracks "Clouds," "Believe," and "Balloon," stating that the deactivation was carried out without just cause or prior notification. The demand also authorized Venice Music to release any claims it deemed "suspicious" and expressed Plaintiff's commitment to cooperate with any investigation or review process.

26. Venice Music's legal department responded through Dani Oliva, Vice President of Business and Legal Affairs, stating that YouTube Content ID had identified claims that 'negatively impact Venice's Tier A status with YouTube.' Venice Music stated that the claims resulted from delivered audio reference files that 'do not comply with Google's current Copyright Management eligibility criteria,' that 'YouTube will also flag suspicious claims that appear to be associated with attempts to circumvent YouTube monetization policy,' and that 'YouTube penalizes distributors for monetizing ineligible content or claimed videos which appear to circumvent their Content ID monetization policies.' (Ex. B.)

27.     Venice Music's distribution model provides artists with 100% of net revenue from monetized content and retains no revenue share for itself. Venice Music's compliance with Defendants' enforcement designations was the predictable operational consequence of Defendants' own distributor-penalty structure: Defendants designed and operated their Content ID enforcement system such that authorized distributors who failed to act upon Defendants' designations would face risks to the distributor's Content ID access, Tier A platform standing, and ability to service other clients. Venice Music's compliance was therefore not an independent business judgment of Venice Music but the predictable and intended operational effect of Defendants' enforcement infrastructure, as Defendants designed that infrastructure to produce.

### F. Defendants' Review, Reactivation, and Continued Suppression (October–November 2023 and Continuing)

28.     After the flagging of the Zephyr Louder Actions album and Venice Music's August 16, 2023 deactivation of Plaintiff's Content ID references, revenue across Plaintiff's Venice Music account collapsed. The account's August 2023 statement total was $9,225.14 and its September 2023 statement total was $7,530.19, before falling to $121.82 in October 2023—a near-total collapse in monetization activity in the first full month after deactivation. (Ex. D.) Additional tracks within Plaintiff's catalog were suppressed, with Plaintiff's reference files either failing to generate claims on user-uploaded videos containing Plaintiff's recordings or generating claims that failed to monetize.

29.     On or about October 4, 2023, Venice Music opened a separate support inquiry and informed Plaintiff that Plaintiff's account was "currently under investigation for potential violation of Venice's Terms of Service" based on "repeated flags received from YouTube" regarding Plaintiff's catalog submissions. (Ex. C.) Venice Music transmitted a YouTube Studio Content Manager screenshot showing "Invalid reference" and "Potential violation of YouTube

monetization policy" designations applied to Plaintiff's "Beautiful Fireworks" and "Forsaken Mic" reference files, and relayed that "What YouTube has detected is content from [Plaintiff's] catalog that is utilize a monetization tactic known as 'hidden recordings' which is a discouraged YouTube monetization practice." (Ex. C.) Plaintiff responded the same day, denying any involvement in "strategies or tactics concerning YouTube monetization, including the alleged 'hidden recordings,'" and authorizing the release of any questionable claims "for clarification." (Ex. C.) On or about October 13, 2023, Venice Music informed Plaintiff that it was "still awaiting details from YouTube regarding the flagged releases." On or about October 18, 2023, Venice Music stated that "YouTube has requested further information" regarding two specific releases— "Beautiful Fireworks" and "Forsaken Mic"—and "the abnormal activity detected regarding Content ID claims and what [it] declares to violate YouTube Spam, Deceptive Practices and Scam policies." (Ex. C.) Venice Music asked Plaintiff to explain why specific segments of two identified videos were "valid." Defendants subsequently communicated through Venice Music that "YouTube performs a legacy scan of all content that matches the sound recordings on the platform, regardless of when the videos were created," and that Content ID "will evaluate all sound recordings and claims based on [Defendants'] guidelines." (Ex. C.) Plaintiff did not own or control the YouTube channels on which those videos appeared. Plaintiff responded to this specific request by offering to release any claims associated with the two flagged videos.

30.    Plaintiff thereafter provided a fuller response. Plaintiff stated that BHBIGFLUCE Records had entered into a written music promotion agreement with TTMedia, an independent promotional service contractor, for the promotion of Plaintiff's music on YouTube channels controlled or managed by TTMedia, and that Plaintiff did not own or control any such channels and had no control, influence, or involvement in the creation, selection, or presentation of content

posted by TTMedia. Plaintiff provided Venice Music with a copy of the written music promotion agreement for transmission to Defendants for their review. On or about October 27, 2023, Venice Music informed Plaintiff that it had shared details regarding the music promotion agreement with the YouTube team and was awaiting their review and feedback. (Ex. C.) The agreement vested TTMedia with exclusive and absolute control over the content and channels used to promote the Music, and provided that Plaintiff had no control or involvement in the creation, selection, or presentation of content posted by TTMedia.

31.    On or about November 14, 2023, Venice Music informed Plaintiff that "YouTube has reactivated monetization on the mentioned releases." (Ex. C.) Defendants had received, through Venice Music, Plaintiff's disclosures regarding 100% copyright ownership, the written TTMedia promotional agreement, and the contractual separation between Plaintiff and the channels incorporating Plaintiff's music. The reactivation reflected Defendants' determination that the flagged content was eligible for renewed monetization.

32.    Following Defendants' November 14, 2023 reactivation, Plaintiff's Venice Music account earned $1,103.54 in November 2023—only approximately 12% of the $9,225.14 earned during the August 2023 accounting-period baseline—reflecting only a partial and short-lived recovery rather than a restoration to normal monetization levels. Beginning December 2023, monthly revenue collapsed. The only payments exceeding $1.00 in any month following the November 2023 reactivation were a February 2024 payment of $1,245.03—a consolidated multi-period payment expressly labeled by Venice Music as "Payment for Feb 2024 to Dec 2023" (Ex. D), of which $1,244.01 was attributable to the track "Forsaken Mic," one of the two specific releases Defendants had reactivated on November 14, 2023—a March 2024 payment of $216.28, an April 2024 payment of $15.14, and a May 2024 payment of $1.16. Beginning June 2024, in

every month from June 2024 through December 2025—a period of 19 consecutive months—Plaintiff's account generated less than $1.00, with monthly revenue ranging from $0.00 to $0.79. Upon information and belief, the February through May 2024 payments reflect late-posting or true-up payments for claim activity occurring in prior periods rather than ongoing monetization. In calendar year 2025, Plaintiff's total Venice Music revenue was less than $2.00. (Ex. D.)

33.    Plaintiff observed following Defendants' November 14, 2023 reactivation that Content ID monetization on Plaintiff's Venice Music account was not restored to pre-flagging levels. Plaintiff raised this observation with Venice Music during the days following the reactivation. Notwithstanding Venice Music's confirmation of delivery and general statements that Content ID was active, the Venice Music account did not return to pre-flagging monetization levels. The February 2024 Forsaken Mic payment described in ¶ 32 was, as reflected on Exhibit D, a consolidated multi-period payment for prior-period accrued earnings rather than restored ongoing monetization. On or about October 2, 2023, Plaintiff delivered additional original sound recordings to Venice Music. Whether and how Defendants' systems processed those additional deliveries, including whether such recordings entered Content ID participation or had detected usage in user-uploaded videos, is within Defendants' exclusive knowledge. The Venice Music account as a whole did not return to pre-flagging monetization levels following the November 14, 2023 reactivation, and the absence of monetization recovery across the account is consistent with account-level suppression mechanisms operating independently of the specific designations Defendants reviewed and cleared. The precise technical or operational mechanism producing the continued suppression of monetization on Plaintiff's Venice Music account is within Defendants' exclusive knowledge and is properly the subject of discovery.

34.    Defendants' own published invalid-reference workflow recognizes a resolved state designated "Owned (Claims routed to review)," in which re-evaluation has been approved but claims made by the reference are still routed to review rather than confirmed as active. Following Defendants' November 14, 2023 reactivation, Plaintiff's Venice Music account did not return to ordinary automated claim-generation or monetization activity. Whether and how Defendants' systems processed the additional original recordings Plaintiff delivered to Venice Music on or about October 2, 2023, including whether those recordings entered Content ID participation or had detected usage in user-uploaded videos, is within Defendants' exclusive knowledge. Upon information and belief, the failure of the Venice Music account to return to ordinary automated Content ID treatment is consistent with either (i) a post-approval "Owned (Claims routed to review)" state or comparable review-routing treatment affecting Plaintiff's Venice Music Content ID Materials, or (ii) an unpublished backend suppression mechanism operating at the account, rights-holder, distributor-account, or identifier level. In either case, Defendants' November 14, 2023 reactivation did not restore Plaintiff's Venice Music Content ID Materials to ordinary automated Content ID treatment.

35.    Plaintiff's Venice Music account, which generated $9,225.14 in the August 2023 accounting period, has been effectively suppressed at near-zero revenue levels for more than 19 consecutive months following Defendants' own review and reactivation reflecting Defendants' determination that the flagged content was eligible for renewed monetization. (Ex. D.) This revenue collapse occurred without any change in Plaintiff's Venice Music Content ID Materials, Plaintiff's distributor, or the accessibility of third-party videos incorporating Plaintiff's music on Defendants' platform. Reference files within Plaintiff's Venice Music Content ID Materials that had previously generated Content ID monetization for Plaintiff produced little or no measurable

monetization activity following the reactivation. Account-level suppression continued after Defendants' November 14, 2023 review and reactivation through mechanisms that operate independently of the specific flags that Defendants reviewed and cleared.

### G. Defendants' Backend Enforcement Designations

36.     Defendants' backend enforcement designation "Invalid reference"—under which "Potential violation of YouTube monetization policy" was displayed as the stated sub-category in Defendants' distributor-facing interface—is a designation applied to specific reference files within Defendants' Content ID infrastructure. Defendants' published support page titled "Review potentially invalid references" (available at https://support.google.com/youtube/answer/6013183) describes "Invalid reference" as a system-level designation that triggers a structured review workflow with defined statuses, automated deadlines, and specified consequences. Among other things, the published workflow provides that references with an "Action required" status must be reviewed and acted upon within 30 days or the segment is automatically excluded, and that resolved invalid-reference issues are assigned defined status states including "Waiting on (Re-evaluation)," "Owned (Re-evaluation approved)," "Owned (Claims routed to review)," "Excluded (Expired)," "Excluded (Manual)," and "Excluded (Re-evaluation denied)." The "Potential violation of YouTube monetization policy" sub-category applied to Plaintiff's reference files in 2023 appeared, upon information and belief, in Defendants' published enumeration of "Invalid reference" sub-categories by 2023.

37.     Defendants' published workflow further states that these invalid-reference review features are available only to partners who use YouTube Studio Content Manager. The same page identifies "Potential violation of YouTube monetization policy" as one of the reasons a reference may be marked invalid; identifies "Owned (Claims routed to review)" as a resolved state in which re-evaluation has been approved but claims made by the reference are still routed to review;

identifies "Excluded (Re-evaluation denied)" as a resolved state; and states that partners "cannot request re-evaluation of references excluded by YouTube" because "this decision is final." Plaintiff, as an independent rights holder without Studio Content Manager/CMS access, was structurally barred from the only review pathway Defendants' published workflow provides.

38.    The designations were applied to reference files for sound recordings Plaintiff delivered to Defendants' Content ID system. Plaintiff holds the exclusive rights necessary for Content ID participation, enrollment, and monetization of the flagged recordings. No entity has disputed Plaintiff's rights in those recordings. Defendants have not communicated to Plaintiff or to Venice Music any specific published Content ID rule or policy provision governing rights-holder conduct in the delivery, maintenance, or monetization of Content ID reference files that Plaintiff's content violated. References communicated through Venice Music to general YouTube platform policies addressing channel-level upload conduct, including "Spam, Deceptive Practices and Scam" policies, do not identify any published Content ID rule governing rights-holder conduct. Defendants, as relayed through Venice Music, similarly referenced "hidden recordings" as a "discouraged YouTube monetization practice" in connection with Plaintiff's catalog, without identifying any published Content ID rule governing rights-holder conduct that defines "hidden recordings" or explains how reference files derived from Plaintiff's wholly owned sound recordings allegedly violated Defendants' Content ID eligibility requirements or monetization policies.

39.    Defendants transmitted the "Invalid reference" designation, with "Potential violation of YouTube monetization policy" as its stated sub-category, to Venice Music through Defendants' backend enforcement system. Venice Music communicated Defendants' designations to Plaintiff, and acted on those designations by terminating Plaintiff's monetization. (Exs. A–C.)

39A.    Venice Music's legal department further attributed the challenged enforcement determinations to "Google's current Copyright Management eligibility criteria" (Ex. B), reflecting that the backend designations described in this section were implemented through Copyright Management systems, policies, and review functions operated or controlled in whole or in part by Defendant Google LLC.

40.    Upon information and belief, in addition to the designations described above, Defendants' Content ID enforcement system designates claims as "pending," "under review," or otherwise subject to manual verification when recordings are detected within user-uploaded video content. Monetization on such claims is delayed, restricted, or withheld pending distributor-level or internal review. Upon information and belief, account-level suppression mechanisms applied to Plaintiff's Venice Music Content ID Materials operate through such designations and continue to affect Plaintiff's monetization after Defendants' November 14, 2023 reactivation of specific flagged releases. Upon information and belief, Defendants further employ automated review-routing or other account-level or asset-level automated mechanisms that may result in delayed, withheld, restricted, or suppressed monetization of rights holders' Content ID materials, including Plaintiff's Venice Music Content ID Materials, and such mechanisms operate without published criteria identifying when they are applied to independent rights holders, without notice to the affected rights holder, and without any direct review mechanism available to the affected rights holder. Upon information and belief, major-label rights holders with direct Content Management System access possess direct review, appeal, and communication channels with respect to such mechanisms that are unavailable to independent rights holders such as Plaintiff, consistent with the structural asymmetry alleged in ¶¶ 15–17.

### H. Distributor Penalty Structure

41.     Venice Music's legal department stated in writing that the flagged claims "negatively impact Venice's Tier A status with YouTube" and that "YouTube penalizes distributors for monetizing ineligible content." (Ex. B.) Authorized distributors such as Venice Music access Content ID through Defendants' infrastructure and are subject to Defendants' enforcement designations. Venice Music's stated rationale accepted Defendants' determination as the operative basis for deactivation and invoked Venice Music's distributor-agreement discretion as the contractual mechanism for effectuating that deactivation.

42.     Defendants' published "Content Manager responsibilities and feature access" page (available at https://support.google.com/youtube/answer/9142671) describes consequences for distributors who do not comply with Defendants' enforcement determinations, including loss of access to CMS features, loss of the ability to link channels or upload videos, and "termination of [the distributor's] entire content owner family." These consequences are not limited to the specific flagged content. Defendants' published "Content ID reference delivery policy" within the same page further provides that content managers "must keep invalid Content ID references <1% of their content owner catalogue and not exceed 500 invalid references within a 30 day period," and that "[c]ontent owners that exceed this may have reference delivery throttled or disabled." Under this policy, backend enforcement designations Defendants apply to any individual rights holder's references accumulate against the distributor's entire catalog threshold and can result in platform-wide throttling or disabling of the distributor's reference delivery capability.

### I. Absence of Contractual or Published-Rule Basis for Plaintiff's Exclusion

43.     Plaintiff did not enter into any direct Content ID participation agreement with Defendants containing a forum selection, arbitration, or dispute resolution provision applicable to the Content ID participation at issue here. Plaintiff's participation in Content ID occurred through Venice Music as an authorized distributor intermediary, rather than pursuant to any direct Content

ID participation agreement between Plaintiff and Defendants. Plaintiff does not seek to enforce any rights under any agreement between Defendants and Venice Music, does not rely on any such agreement as the basis for any of its claims, and does not assert any claim that depends upon the terms of any such agreement. Notwithstanding the absence of such an agreement, Defendants voluntarily engaged with Plaintiff's content through Defendants' own infrastructure: Defendants' automated systems accepted Plaintiff's sound recordings into Content ID, identified Plaintiff as the rights holder associated with the relevant reference files, generated and allocated monetization revenue attributable to Plaintiff's recordings from independently uploaded videos through Defendants' own systems, transmitted backend designations to Plaintiff's authorized distributor concerning specific reference files corresponding to Plaintiff's content, reviewed information submitted on Plaintiff's behalf, and, on November 14, 2023, reactivated monetization on identified releases. Defendants' conduct constitutes a course of dealing in which Defendants supplied factual designations to Plaintiff's authorized distributor for the guidance of that distributor in making eligibility and enforcement decisions affecting Plaintiff's identified catalog, giving rise to a duty of ordinary care and honesty in the factual designations Defendants transmitted to Plaintiff's authorized distributor concerning Plaintiff's content.

44.    Defendants' published circumvention policy addresses conduct by YouTube channel operators who upload content to circumvent the platform's monetization rules. Plaintiff is not a channel. Defendants' Spam, Deceptive Practices and Scams policy, referenced in communications transmitted to Plaintiff's authorized distributor concerning Plaintiff's content, governs channel-level uploading and creator conduct on the consumer-facing YouTube platform. It does not govern rights-holder participation in Content ID, and Plaintiff's submission of original sound recordings to Content ID through an authorized distributor is not channel-level uploading

or creator conduct within the scope of that policy. Plaintiff is a rights holder whose original copyrighted music was detected in third-party videos through automated fingerprint matching. Defendants' published "Content Manager responsibilities and feature access" page defines the "circumventing systems" policy as obligations imposed on content managers (authorized distributors who operate CMS accounts). Plaintiff is not a content manager, does not operate a CMS account, and does not have access to the CMS tools governed by this policy.

45.    Defendants' published "Content eligible for Content ID" page (available at https://support.google.com/youtube/answer/2605065) enumerates categories of content ineligible for use as a Content ID reference: content licensed non-exclusively from a third party; content released under Creative Commons or similar open licenses; public domain footage, recordings, or compositions; clips used under fair use principles; video gameplay footage; karaoke recordings, remasters, and sound-alike recordings; sound effects, soundbeds, or production loops; compilations, DJ mixes, mashups, countdown lists, and full album sound recordings. Plaintiff's content is not within any of those categories.

46.    Defendants' "Invalid reference" designation, including the sub-category "Potential violation of YouTube monetization policy," is applied to reference files at the asset level and, on its face, represents that the designated reference file—a sound recording delivered by the rights holder—is the source of the alleged violation. In Plaintiff's case, the designation was applied to reference files for sound recordings that Plaintiff owns in their entirety and that contain no material outside Plaintiff's sole ownership. To the extent Defendants' designation rests on an allegation that Plaintiff's content "circumvents" monetization eligibility, the factual predicate for that allegation is the upload conduct of independent third-party channels that Plaintiff does not own or control, not any characteristic of the reference files themselves. Defendants' November 14, 2023

reactivation of the specific flagged releases—following Defendants' review of Plaintiff's ownership disclosures, the written TTMedia promotional agreement, and Plaintiff's disclosures regarding non-control of the YouTube channels—reflected Defendants' determination that the designated reference files were not in fact ineligible for monetization. Defendants' continued maintenance of account-level suppression mechanisms after that review and reactivation is not consistent with the purported basis for the initial designation. Plaintiff's claims address Defendants' use, maintenance, transmission, and distributor-facing implementation of Content ID-related eligibility designations, claim-generation controls, match-confidence thresholds, review routing, monetization restrictions, instructions, directions, signals, or other communications to authorized distributors concerning enforcement action against rights holders' content, Defendants' design and operation of distributor-facing systems and interfaces to communicate enforcement determinations and induce distributor-level action, and distributor penalty pressure as applied to undisputedly owned sound recordings based on alleged third-party channel conduct and unpublished or unidentified criteria. Plaintiff does not challenge Defendants' operation of Content ID as a system for detecting reused copyrighted works in user-uploaded videos or for the good-faith adjudication of bona fide competing-ownership disputes between rights holders making conflicting ownership claims to the same recording. Plaintiff's claims are directed at Defendants' application of the conduct identified above to Plaintiff's undisputedly owned recordings, where no competing ownership claim was asserted and no published Content ID rule applicable to rights holders supported the designations.

47.    Plaintiff did not create, compile, upload, or control the YouTube videos identified by Defendants or Venice Music as the basis for the 2023 enforcement designations, or the third-party channels that uploaded them. Independent third-party channel operators created and

uploaded those identified videos. Defendants maintain channel-level enforcement tools specifically directed at such upload conduct, including content removal, channel demonetization, channel strikes, and channel termination. Rather than address the alleged upload conduct through the channel-level tools directed at the responsible channel operators, Defendants applied asset-level enforcement designations to Plaintiff's reference files and transmitted those designations to Plaintiff's authorized distributor, attributing to Plaintiff conduct of third parties Plaintiff does not own or control.

### J. Pretext

48.    Defendants' "circumvention" rationale, as applied to Plaintiff's Venice Music Content ID Materials, was pretextual. Upon information and belief, Defendants do not apply comparable "Invalid reference" or "Potential violation of YouTube monetization policy" designations to major-label reference files engaged in materially similar Content ID participation. The rationale, as applied to Plaintiff, was not grounded in any neutral, consistently applied rule.

### K. Ongoing Injury

49.    Upon information and belief, Defendants continue to maintain restrictions, designations, or suppression mechanisms affecting Plaintiff's Venice Music Content ID Materials. The continued suppression of monetization on the Venice Music account, observable in the monthly revenue data through December 2025 (Ex. D), is consistent with the continued maintenance or reapplication of such restrictions on Plaintiff's Venice Music Content ID Materials.

50.    Upon information and belief, the "Invalid reference" designation, the "Potential violation of YouTube monetization policy" sub-category, or equivalent backend review-routing or suppression mechanisms remain applied to, or have been reapplied to, Plaintiff's Venice Music Content ID Materials following the November 14, 2023 reactivation. This belief is based on (a)

the continued near-zero monetization activity on Plaintiff's Venice Music account for 19+ consecutive months following the reactivation, (b) the absence of any communication from Defendants withdrawing the designations or confirming their removal, and (c) Defendants' published invalid-reference workflow recognizing a post-approval claim-review routing state. To the extent any continued or reapplied designation rests on the use of Plaintiff's recordings in third-party uploaded videos, it rests on channel-level conduct Plaintiff does not own or control.

51.    Plaintiff's monetization revenue has been reduced to near-zero levels and continues to accrue financial injury on a daily basis.

52.    Plaintiff has no mechanism to appeal, contest, or obtain review of Defendants' backend enforcement designations applicable to Plaintiff's content. Defendants' own published invalid-reference workflow confirms that the only review pathway is through YouTube Studio Content Manager/CMS access, which Plaintiff does not possess as an independent rights holder accessing Content ID through Venice Music. Authorized distributors may relay requests to Defendants, but operate under Defendants' penalty structure and cannot provide independent review or meaningful recourse, and Defendants' published workflow recognizes terminal-exclusion resolution states that are not subject to further re-evaluation.

53.    Plaintiff has no adequate remedy at law for the ongoing restrictions on Plaintiff's Content ID participation. Content ID is the principal automated system through which rights holders receive allocated revenue when their copyrighted sound recordings are detected in user-uploaded videos on Defendants' platform, and there is no substitute system through which Plaintiff can recover revenue associated with detection of Plaintiff's recordings in creator-uploaded content on Defendants' platform. Defendants' continued suppression deprives Plaintiff, on a daily and ongoing basis, of claim activity, accrued claim history, and participation in the automated

allocation of revenue from creator-uploaded videos. The cumulative harm from Plaintiff's ongoing exclusion—including foregone claim activity, loss of accrued claim history, and impaired ability to build and maintain catalog value on Defendants' platform—is not susceptible to precise quantification, and each day of continued suppression produces additional harm of the same kind. Defendants have not provided, and Plaintiff does not have, any mechanism through which to appeal the designations or obtain review of the continued account-level restrictions. The injury caused by Defendants' continued suppression cannot be fully remedied by money damages alone.

54.     Plaintiff's claims are based on factual assertions made by Defendants through Defendants' backend enforcement infrastructure and on Defendants' own continuing conduct in maintaining account-level suppression affecting Plaintiff's Venice Music Content ID Materials. Plaintiff does not seek to hold Defendants liable as the publisher or speaker of any information provided by another information content provider. Plaintiff does not challenge Defendants' editorial decisions concerning any third-party content, any third-party channel, or any user-uploaded video. Plaintiff's claims concern Defendants' own factual representations about Plaintiff's specifically identified reference files, Defendants' own transmission of those representations to Plaintiff's authorized distributor, and Defendants' own continuing conduct in maintaining enforcement mechanisms affecting Plaintiff's Venice Music Content ID Materials after Defendants' own review determined the specific flagged content was eligible for monetization. Plaintiff does not seek relief based on, or requiring, Defendants' publication, removal, restriction, ranking, recommendation, demonetization, or moderation of any third-party video or channel, but challenges only Defendants' own factual designations concerning Plaintiff's Venice Music Content ID Materials and Defendants' own operational treatment of those materials before, during, and after Defendants' eligibility review. For the avoidance of doubt, Plaintiff's

claims in this action are limited to the conduct alleged against Plaintiff's Venice Music Content ID Materials in 2023 and thereafter. Plaintiff does not in this action assert any claim arising from conduct occurring in any pre-May-2023 distributor relationship.

### L. Exhibits

55.    The following exhibits are attached to this Complaint and incorporated by reference: Exhibit A (Venice Music communications to Plaintiff dated July 6, 2023 through July 17, 2023, including the "Unauthorized Activity Detected" notice, Defendants' verbatim circumvention language as relayed by Venice Music, and the screenshot showing Defendants' "Invalid reference" and "Potential violation of YouTube monetization policy" designations applied to Plaintiff's Clouds and Balloon reference files); Exhibit B (Venice Music communications to Plaintiff dated August 16–17, 2023, and correspondence from Venice Music Vice President of Business and Legal Affairs Dani Oliva dated August 16, 2023, concerning the Content ID deactivation and Venice Music's Tier A platform status with YouTube); Exhibit C (Venice Music communications to Plaintiff dated October 4, 2023 through November 15, 2023, including the YouTube Studio screenshot showing "Invalid reference" designations for Beautiful Fireworks and Forsaken Mic, the October 18, 2023 request for information regarding two identified videos, Plaintiff's October 24, 2023 response transmitting the music promotion agreement, and the November 14, 2023 reactivation notice); and Exhibit D (Venice Music payment statement for Plaintiff's BHBIGFLUCE Records label account, showing monthly Content ID earnings and payments from August 2023 through December 2025).

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Tortious Interference with Prospective Economic Advantage (New York Law)**

56.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

57.     Plaintiff had an expectancy of continued economic benefit from the monetization of its original sound recordings through Venice Music's Content ID portal when those recordings were detected in user-uploaded videos. Plaintiff uploaded original copyrighted recordings through that portal, the recordings were accepted into the Content ID system, and automated monetization revenue began to accrue from the detected use of Plaintiff's recordings in user-uploaded videos.

58.     Defendants knew of Plaintiff's participation in Content ID monetization through Venice Music because Defendants' backend systems identified Plaintiff's content, applied designations to Plaintiff's specific reference files, and transmitted those designations to Venice Music through Defendants' distributor-facing interface.

59.     Defendants interfered with Plaintiff's prospective economic relationship with Venice Music by transmitting to Venice Music the "Invalid reference" designation (with "Potential violation of YouTube monetization policy" as its stated sub-category) regarding Plaintiff's content. That designation was false: Plaintiff holds the exclusive rights necessary for Content ID participation, enrollment, and monetization of the designated sound recordings, no party has disputed Plaintiff's rights in those recordings, and Defendants have not communicated to Plaintiff or to Venice Music any published Content ID rule applicable to rights holders that Plaintiff's content violated. Venice Music terminated Plaintiff's monetization in reliance on Defendants' designations. Plaintiff's claim is based on Defendants' communications to Venice Music regarding Plaintiff's content; it does not require a direct contractual or communicative relationship between Plaintiff and Defendants.

60.      Defendants' interference was wrongful and was accomplished through means that, under New York law, qualify as wrongful for purposes of tortious interference with prospective economic advantage. Defendants made false factual assertions about Plaintiff's content—specifically, the false "Invalid reference" parent designation and false "Potential violation of YouTube monetization policy" sub-category described in ¶¶ 66(a)–(b)—and transmitted those false factual assertions to Plaintiff's distributor with knowledge of their falsity or with reckless disregard for the truth, as set forth in ¶ 69. Defendants' wrongful means therefore amount to misrepresentation and to the independent tort of fraud as separately pleaded in the Second Cause of Action. The designations attributed to Plaintiff, at the asset level, alleged defects arising from the upload conduct of independent third-party channels Plaintiff does not own or control. Defendants continued to maintain account-level suppression after their own review concluded on November 14, 2023 that the specific flagged content was eligible for monetization. Defendants acted in the face of Plaintiff's undisputed copyright ownership and with no published rule supporting the designations. Defendants chose to engage with Plaintiff's content through Defendants' own Content ID infrastructure—accepting Plaintiff's sound recordings, generating monetization revenue from detection of Plaintiff's recordings in user-uploaded videos, and transmitting designations to Plaintiff's distributor concerning Plaintiff's specific reference files—and, in the course of that engagement, transmitted the false designations that caused Venice Music to terminate Plaintiff's monetization.

61.      Defendants' interference continues. Upon information and belief, Defendants continue to maintain backend designations and account-level suppression mechanisms affecting Plaintiff's Venice Music Content ID Materials.

62.     Plaintiff has suffered injury, including lost monetization revenue, destruction of distributor relationships, loss of goodwill, and ongoing daily loss of revenue. Plaintiff's account revenue has fallen from $9,225.14 in August 2023 to less than $2.00 in total across calendar year 2025. Aggregate damages will be proven at trial and exceed the jurisdictional minimum of $75,000. Plaintiff's injury is ongoing and is not fully remediable through money damages.

## SECOND CAUSE OF ACTION

### Fraud (New York Law)

63.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

64.     This claim is pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b).

65.     **Who.** The false factual assertions at issue—the "Invalid reference" designation, the "Potential violation of YouTube monetization policy" sub-category, and the accompanying "circumvention" reason described in ¶ 66—are Defendants' own statements. They were created and developed by Defendants' Content ID enforcement infrastructure, which Defendants designed, operate, and maintain, and were transmitted by Defendants in Defendants' own voice to Venice Music. The designations were not statements provided by Plaintiff, by Venice Music, by any third-party uploader, or by any other information content provider. Defendants are responsible, in whole or in part, for the creation and development of the false factual content of the designations at issue. The designations are factual eligibility and enforcement determinations issued through Defendants' published Content ID workflow with operative backend consequences for the designated rights holder's monetization; they are not discretionary opinions, policy commentary, predictions, or aspirational statements. Corporations act through their systems and personnel. The

designations at issue are institutional actions of Defendants, transmitted by Defendants' enforcement personnel in the ordinary course of Defendants' Content ID enforcement operations. As reflected in communications from Venice Music's legal department (Ex. B), the enforcement determinations at issue were attributed to Defendants' "Copyright Management" function applying eligibility criteria within Defendants' Content ID system. The personnel responsible for generating and transmitting enforcement designations include individuals within Defendants' Copyright Management function and related enforcement operations who apply, maintain, and transmit enforcement designations to authorized distributors through Defendants' distributor-facing interface. Identification of the specific individuals who applied the designations to Plaintiff's Venice Music reference files requires information within Defendants' exclusive control and will be obtained through discovery. The specific identities of Defendants' personnel responsible for the challenged designations, enforcement determinations, and communications are presently known only to Defendants because the relevant determinations were generated and communicated through Defendants' internal Content ID and CMS enforcement systems and transmitted through intermediary distributor channels.

66.    **What.** Defendants communicated a false factual assertion about Plaintiff's content to Venice Music through Defendants' backend enforcement system. The assertion was structured as a parent designation with a displayed sub-category and accompanying reason supplying the stated basis for the parent designation, as described below:

(a)    The parent designation "Invalid reference." This designation asserts that Plaintiff's reference file does not meet Defendants' Content ID eligibility criteria. The assertion is false. The designation was applied at the asset level to specific reference files corresponding to sound recordings owned entirely by Plaintiff. Plaintiff holds

the exclusive rights necessary for Content ID participation, enrollment, and monetization of the sound recordings and underlying musical compositions. Those recordings are original copyrighted works and are not within Defendants' published list of content categories ineligible for Content ID use. On November 14, 2023, Defendants reactivated monetization on the specific releases that had been designated, confirming that the specific flagged content was in fact eligible for monetization. The designation, on its face, represents that the reference file itself is the source of the asserted eligibility problem; it does not, on its face, communicate that the predicate for the designation is conduct by independent third-party channel operators Plaintiff does not own or control.

(b)   The displayed sub-category and accompanying reason. "Potential violation of YouTube monetization policy" was displayed under the "Invalid reference" designation in Defendants' distributor-facing interface as the stated sub-category of the parent designation, accompanied by Defendants' system-generated statement that "Our systems detected that it is likely that this reference is being used to circumvent our monetization eligibility requirements by using Content ID to monetize content that is ineligible for monetization." The sub-category and accompanying statement supplied the stated factual basis for the false "Invalid reference" designation described in subpart (a) above. That stated basis is itself false. Plaintiff holds the exclusive rights necessary for Content ID participation, enrollment, and monetization of the sound recordings underlying the designated reference files, which are original works and not within any enumerated category of content Defendants have published as ineligible for Content ID use. Plaintiff

received revenue through Defendants' own Content ID automated revenue-allocation system, which identified Plaintiff's recordings within third-party videos and allocated revenue to Plaintiff according to Defendants' own detection and allocation protocols. To the extent any third-party video contained content Defendants deemed ineligible for reasons independent of Plaintiff's reference file, that conduct is attributable to the channel operator who uploaded the video, not to Plaintiff. Defendants have not communicated to Plaintiff or to Venice Music any published Content ID rule applicable to rights holders that Plaintiff's content violated. Plaintiff is not a content manager and does not operate a CMS account governed by Defendants' "circumventing systems" policy. Defendants' published policies concerning "circumvention" address channel-level upload conduct and content-manager CMS conduct. Plaintiff's copyrighted sound recordings were detected in independently uploaded third-party videos through Defendants' automated fingerprint-matching system.

(c)    **Continued and reapplied designations.** Following Defendants' November 14, 2023 reactivation, the "Invalid reference" designation and its "Potential violation of YouTube monetization policy" sub-category have, upon information and belief, remained applied or been reapplied to Plaintiff's reference files. The sub-category, by its terms and by Defendants' own articulated basis as conveyed through Venice Music, rests on the use of Plaintiff's recordings in third-party uploaded videos — i.e., on channel-level upload conduct — rather than on any characteristic of the reference files themselves. Defendants were provided with Plaintiff's ownership disclosures and the TTMedia agreement showing that Plaintiff did not own or

control the channels at issue, and thereafter reactivated monetization on the specific releases. Any continued or reapplied "Invalid reference" designation on Plaintiff's reference files predicated on channel-level conduct is therefore a knowingly false statement that Plaintiff's reference file is the source of the asserted eligibility problem, when Defendants' own review proceeded on the basis that the alleged problem, if any, was attributable to channel operators against whom Defendants maintain separate channel-level enforcement tools.

67.     **When.** Defendants transmitted the designations to Venice Music through their backend enforcement system on or before July 6, 2023 (the date of Venice Music's first communication to Plaintiff referencing the flagging). Defendants' language regarding "circumvention" was relayed to Plaintiff through Venice Music's communications in July 2023 and the August 16, 2023 communication attributing the deactivation to Defendants' determination that Plaintiff's reference segments "do not meet Content ID eligibility requirements and [circumvent] Content ID monetization policy." Defendants reactivated the flagged content on November 14, 2023. Account-level suppression continued thereafter and continues to the present.

68.     **Where and how.** Defendants transmitted the designations through Defendants' proprietary backend enforcement system, visible to authorized distributors such as Venice Music through Defendants' distributor-facing interface. The "Invalid reference" designation appeared in Venice Music's distributor-facing view of Plaintiff's reference files as a system-level flag, with "Potential violation of YouTube monetization policy" displayed as the stated sub-category beneath it. Defendants further transmitted the designations to Venice Music through written communications, including communications from Defendants' Copyright Management team to Venice Music personnel, which Venice Music relayed in substance to Plaintiff.

69.    **Scienter.** Defendants made the assertions described above with knowledge of their falsity or with reckless disregard for their truth. Defendants' scienter rests on four independent grounds. **First**, by November 14, 2023, Defendants had reviewed Plaintiff's ownership and non-control evidence and thereafter reactivated monetization on the specific releases. Any continued maintenance or reapplication of the "Invalid reference" designation or its "Potential violation of YouTube monetization policy" sub-category on Plaintiff's reference files after that review and reactivation is, at minimum, reckless as to truth, because Defendants' own review proceeded on the basis that the underlying content was eligible for monetization. **Second**, the original designation was at least recklessly applied. Defendants had exclusive access to Defendants' internal enforcement systems, policy definitions, and compliance criteria. Defendants had access to their own retained Content ID asset records reflecting the asset-level identification of these reference files, including the recording-level identifiers and distributor-account metadata described in ¶ 19, and later received Plaintiff's ownership and non-control evidence showing that Plaintiff held the exclusive rights necessary for Content ID participation, enrollment, and monetization of the flagged recordings and that Plaintiff's recordings did not fall within any enumerated category of content ineligible for Content ID use. Defendants applied the "Invalid reference" designation, with "Potential violation of YouTube monetization policy" as its stated sub-category, within Defendants' published workflow whose resolution states include terminal exclusion ("Excluded (Re-evaluation denied)") and post-approval claim-review routing ("Owned (Claims routed to review)"), each of which carries operative consequences for the designated rights holder's monetization. The application of a workflow-anchored designation carrying terminal and claim-routing consequences, followed by reactivation after Defendants reviewed Plaintiff's ownership and non-control evidence, supports the inference that the original designation was at

least recklessly applied. **Third**, by Defendants' own published distinction between rights-holder-facing Content ID rules and channel-facing platform policies, Defendants know that any designation or sub-category attributing eligibility problems to Plaintiff's reference file when the actual asserted basis is third-party channel conduct is false as to the reference file. Defendants' continued maintenance or reapplication of such designations after the November 14, 2023 review and reactivation is therefore knowing or, at minimum, reckless. **Fourth**, Defendants' continued maintenance of suppression on Plaintiff's Venice Music Content ID Materials after Defendants' own November 14, 2023 review and reactivation—a review that proceeded on the basis of Plaintiff-specific ownership confirmations, the TTMedia promotional agreement, and non-control evidence, and that resulted in Defendants' determination that the specific flagged content was eligible for renewed monetization—is conduct undertaken in bad faith, not in the good-faith enforcement of any published Content ID eligibility rule applicable to rights holders, because the asserted basis for the original designations has been removed by Defendants' own review and yet the operative consequences of those designations remain.

70. **Intent to induce reliance.** Defendants transmitted the designations to distributors with the intent that Venice Music and other distributors would rely upon them by deactivating, refusing to reinstate, or declining to carry Plaintiff's reference files. Defendants' backend enforcement system was designed to make the designations visible to distributors and to carry enforcement consequences for distributors, including risks to the distributor's own Content ID access, platform standing, and ability to service other clients. The re-evaluation mechanism available to distributors is funneled through CMS access that independent rights holders such as Plaintiff do not possess, ensuring that distributor compliance is the operative consequence of the designations.

71.    **Reliance.** Plaintiff relied on Defendants' representations regarding Plaintiff's reference files. Defendants' representations were transmitted to Plaintiff through Venice Music, which served as the necessary conduit through which Defendants communicated eligibility designations and enforcement determinations to Plaintiff. Plaintiff had no direct line of communication with Defendants regarding eligibility designations applicable to Plaintiff's content; Defendants required communication through the authorized-distributor channel. Plaintiff received Defendants' representations through Venice Music's relay of the screenshots, designations, and circumvention language described above, and Plaintiff acted on those representations by submitting ownership confirmations, original music videos produced by Plaintiff, explanatory responses denying any "circumvention" or "hidden recordings" conduct, and the non-public TTMedia promotional agreement for transmission to Defendants. Plaintiff would not have disclosed the non-public TTMedia agreement or undertaken that response process absent Defendants' communicated designations. Venice Music likewise relied on Defendants' designations by deactivating Plaintiff's reference files and invoking its distributor-agreement authority and Terms of Service as the contractual mechanism for implementing Defendants' enforcement flags and declining to restore ordinary monetization treatment for the affected releases, as confirmed in writing by Venice Music's legal department, which attributed the deactivation to Defendants' enforcement flags and the threat to Venice Music's Tier A platform standing (Ex. B). Plaintiff's injury resulted from Plaintiff's reliance on Defendants' representations as operative eligibility and enforcement determinations conveyed through the only channel Defendants made available to Plaintiff, together with Venice Music's reliance on those same designations. In the alternative, Plaintiff did not rely on the truth of any accusation that Plaintiff's content was ineligible, which Plaintiff disputed from the outset. Plaintiff relied only on the truth

of the operative fact that Defendants had issued eligibility and enforcement designations concerning Plaintiff's reference files and that those designations carried real consequences for Plaintiff's monetization through Venice Music. Plaintiff acted in response to those operative designations—including by disclosing the non-public TTMedia agreement and submitting ownership and non-control evidence—because the designations were consequential regardless of their accuracy.

72.    **Damages.** Plaintiff has suffered lost monetization revenue, destruction of distributor relationships, loss of goodwill, and ongoing daily loss of revenue. Aggregate damages will be proven at trial and exceed the jurisdictional minimum of $75,000. Plaintiff also seeks punitive damages in connection with the fraud count.

## THIRD CAUSE OF ACTION

### Negligent Misrepresentation (New York Law) — Pleaded in the Alternative

73.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein. This claim is pleaded in the alternative to the Second Cause of Action.

74.    Defendants owed a duty of care to Plaintiff with respect to the accuracy of the backend enforcement designations Defendants transmitted to Venice Music regarding Plaintiff's content. Defendants (i) supplied factual designations to Venice Music regarding Plaintiff's specifically identified reference files; (ii) knew that Venice Music would rely on those designations in making enforcement decisions affecting Plaintiff; (iii) designed the backend enforcement system to communicate such designations through distributor intermediaries, producing distributor action affecting the underlying rights holder; and (iv) knew, or had access to records identifying, the specific rights holder whose content was being designated, the specific distributor to whom the designations were transmitted, and the purpose for which the distributor would use the

designations. Defendants' conduct supplied linking conduct between Defendants and Plaintiff specifically. Defendants identified Plaintiff's specific reference files and sound recordings by audio fingerprint and asset identifier; transmitted Plaintiff-specific eligibility designations to Venice Music for the known purpose of causing Venice Music to take action affecting Plaintiff's monetization; generated and allocated Content ID revenue attributable to Plaintiff's specifically identified recordings through Defendants' own automated systems; and, in October and November 2023, reviewed Plaintiff-specific submissions concerning ownership, original creation of the recordings, and non-control of the third-party YouTube channels at issue before reactivating the specifically identified releases on November 14, 2023. Defendants' relationship to Plaintiff with respect to Plaintiff's Venice Music Content ID Materials is therefore not the generic relationship between a platform operator and the public at large, but a specific operational relationship in which Defendants knew, or had access to records identifying, Plaintiff as the rights holder associated with the designated content, identified Plaintiff's content by asset identifier and audio fingerprint, and knew Venice Music would act on Defendants' designations with consequences for Plaintiff specifically. Defendants' specific operational relationship with Plaintiff with respect to Plaintiff's Venice Music Content ID Materials satisfies the three indicia recognized under New York law for imposing a duty of care to a non-contracting party: (i) Defendants supplied the factual designations to Venice Music for the particular purpose of producing distributor-level enforcement action that would affect Plaintiff, the specifically identified rights holder; (ii) Defendants knew and identified the specific party who would suffer the consequences of those designations—Plaintiff, identified by Defendants' own asset-level records, audio fingerprints, ISRCs, UPCs, asset identifiers, Plaintiff's BHBIGFLUCE Records label account name, and Venice Music distributor-account metadata—and Defendants reviewed Plaintiff-specific submissions before reactivating Plaintiff-

specific content on November 14, 2023; and (iii) Defendants' conduct linked them to Plaintiff specifically through the asset-level identification of Plaintiff's reference files and through Defendants' review and reactivation of Plaintiff-specific content following submission of Plaintiff-specific evidence. Defendants further possess unique and specialized expertise in the Content ID enforcement system, the operation of which is exclusively within Defendants' control. The relationship between Defendants and Plaintiff with respect to Plaintiff's Venice Music Content ID Materials is accordingly the specific operational, known-recipient, known-purpose relationship recognized under New York law as sufficient to support a duty to impart correct information.

75.     Defendants transmitted the "Invalid reference" designation, with "Potential violation of YouTube monetization policy" as its stated sub-category, without reasonable care as to the accuracy of those designations. Defendants' own subsequent review on November 14, 2023 resulted in reactivation of the underlying content for monetization.

76.     Venice Music relied on the designations by deactivating Plaintiff's reference files and terminating Plaintiff's monetization.

77.     Plaintiff suffered damages as a result of Venice Music's reliance, including lost monetization revenue, destruction of distributor relationships, and ongoing daily loss of revenue. Aggregate damages will be proven at trial and exceed the jurisdictional minimum of $75,000.

## FOURTH CAUSE OF ACTION

### Trade Libel / Injurious Falsehood (New York Law)

78.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

79.     Defendants, acting as the speaker and originator of the statements at issue, published a false statement concerning Plaintiff's business and property. The statements at issue

are Defendants' own factual assertions, created and developed by Defendants and transmitted by Defendants to Venice Music; they are not statements provided by any other information content provider. The "Invalid reference" designation, transmitted within Defendants' formal published invalid-reference workflow, is a statement of fact that Plaintiff's reference files do not meet Defendants' Content ID eligibility criteria—a factual eligibility determination with operative backend consequences, not a discretionary opinion or policy commentary. "Potential violation of YouTube monetization policy" was displayed under the "Invalid reference" designation in Defendants' distributor-facing interface as the stated sub-category supplying the asserted factual basis for the parent designation. The "Invalid reference" designation is false, and the "Potential violation of YouTube monetization policy" sub-category supplied a false stated basis for it. Plaintiff's recordings are original copyrighted works owned in their entirety by Plaintiff, are not within any category of content Defendants have published as ineligible, and do not violate any published Content ID rule applicable to rights holders. The workflow within which Defendants transmit such designations recognizes resolution states that include terminal exclusion not subject to further re-evaluation and post-approval routing of claims to review, each of which carries operative consequences for the designated rights holder's monetization. Defendants' own November 14, 2023 review and reactivation support the inference that the flagged content was eligible for monetization.

80.     Defendants published these false statements to third parties. Defendants transmitted the designations to Venice Music through Defendants' distributor-facing interface and through written communications from Defendants' Copyright Management team. The statements were communicated to Venice Music's operational personnel and to Venice Music's legal department, as reflected in Venice Music's correspondence with Plaintiff's counsel. (Exs. A–C.)

81.    Defendants published the statements with malice, or alternatively with reckless disregard for their truth. Defendants had exclusive access to Defendants' internal enforcement criteria and knew that Plaintiff's content did not violate any published Content ID rule applicable to rights holders and that Plaintiff's reference files met Defendants' published Content ID eligibility criteria. Defendants further knew, or had access to records and submissions showing, that Plaintiff held the exclusive rights necessary for Content ID participation, enrollment, and monetization of the flagged recordings. By November 14, 2023, Defendants had reviewed Plaintiff's ownership and non-control evidence and reactivated the specific flagged content; account-level suppression nonetheless continued, causing the false designations to remain operative. Defendants' conduct in maintaining or reapplying the false designations on Plaintiff's reference files after Defendants' own November 14, 2023 review and reactivation, and in maintaining account-level suppression mechanisms after that review and reactivation, was not undertaken in good faith and reflects, at minimum, reckless disregard for the absence of any factual or published-rule basis for continuing to treat Plaintiff's reference files as ineligible after Defendants' own review confirmed eligibility.

82.    Defendants' statements caused Plaintiff special damages, pleaded with particularity as follows. Venice Music terminated Plaintiff's monetization on the Zephyr Louder Actions album (including the tracks "Clouds," "Believe," and "Balloon") and on the "Beautiful Fireworks" and "Forsaken Mic" reference files based on Defendants' statements (Exs. A–C). Plaintiff's Venice Music account revenue fell from $9,225.14 in the August 2023 accounting period to $7,530.19 in September 2023, $121.82 in October 2023, and $1,103.54 in November 2023—a partial reactivation-month figure equal to approximately 12% of the pre-enforcement baseline (Ex. D). Following the November 14, 2023 reactivation, the only payments exceeding $1.00 in any month

were a February 2024 consolidated multi-period payment of $1,245.03 (of which $1,244.01 was attributable to a single track, "Forsaken Mic," one of the two specific releases Defendants had reactivated on November 14, 2023), a March 2024 payment of $216.28, an April 2024 payment of $15.14, and a May 2024 payment of $1.16, all of which reflect, upon information and belief, late-posting or true-up payments for claim activity occurring in prior periods rather than ongoing monetization. In every month from June 2024 through December 2025—a period of 19 consecutive months—Plaintiff's account generated less than $1.00, with monthly revenue ranging from $0.00 to $0.79 (Ex. D). Total Venice Music revenue across calendar year 2025 was less than $2.00. Specific reference files within Plaintiff's Venice Music Content ID Materials that had previously generated Content ID monetization for Plaintiff produced little or no measurable monetization activity following the reactivation, including in connection with the "Beautiful Fireworks" and "Forsaken Mic" reference files that had been specifically designated by Defendants and that, upon reactivation, would in the ordinary course have generated proportional revenue allocation from Defendants' Content ID system based on detected usage in user-uploaded videos. The injurious effect of Defendants' statements was amplified by Defendants' published workflow, which subjects designated reference files to formal enforcement processing including potential terminal exclusion and routed claim review, and by Defendants' distributor penalty structure, which compelled Venice Music's compliance.

83.    Upon information and belief, Defendants' false designations remained available to and operative within Defendants' distributor-facing systems following the November 14, 2023 reactivation. To the extent Defendants transmitted, displayed, republished, refreshed, or reapplied those designations to Venice Music or any authorized distributor within the limitations period applicable to this claim, each such transmission constituted a separate publication.

**<u>FIFTH CAUSE OF ACTION</u>**

**Promissory Estoppel (New York Law)**

84.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

85.    On November 14, 2023, Defendants, through Venice Music, communicated to Plaintiff a clear and definite determination that "YouTube has reactivated monetization on the mentioned releases." This communication was made after Defendants had reviewed Plaintiff's written TTMedia promotional agreement, Plaintiff's disclosures regarding non-ownership and non-control of the YouTube channels incorporating Plaintiff's music, and the factual basis for the specific claims flagged for review. The reactivation was an operative eligibility determination issued through, reflected in, or implemented within Defendants' published invalid-reference workflow. Defendants' published workflow provides defined resolution states for designated reference files, including terminal exclusion ("Excluded (Re-evaluation denied)") and post-approval claim-review routing ("Owned (Claims routed to review)"), each of which carries operative consequences for the designated rights holder's monetization, as set forth in ¶¶ 34, 69. By communicating that "YouTube has reactivated monetization on the mentioned releases" following review of Plaintiff's ownership and non-control evidence, Defendants represented and promised that Plaintiff's flagged releases had been moved out of suppressive workflow states and would be processed on the same Content ID monetization terms as other rights holders' content of undisputed ownership not subject to enforcement designations. Defendants' communication was clear and unambiguous as to its operative effect within Defendants' own workflow: it represented and promised that the specific designated reference files had been reactivated for ordinary Content ID monetization treatment.

86.     Plaintiff reasonably and foreseeably relied on Defendants' reactivation representation by delaying remedial action and continuing to await ordinary monetization treatment, based on the reasonable expectation that the reactivation would operate as represented. As a consequence of that forbearance, Plaintiff's losses continued to accrue while Defendants' suppression remained in effect.

87.     Plaintiff's reliance was to Plaintiff's detriment. Notwithstanding Defendants' reactivation of the specific flagged releases, Defendants maintained and continue to maintain account-level suppression mechanisms—whether operating through a recognized "Owned (Claims routed to review)" state, comparable claim-routing or pending-review treatment, or unpublished backend suppression—that prevent Plaintiff's Venice Music Content ID Materials from generating Content ID revenue commensurate with its pre-enforcement performance. The continued suppression is inconsistent with Defendants' November 14, 2023 review and reactivation within Defendants' own workflow. Plaintiff's monthly revenue following the reactivation has remained at near-zero levels for more than two years.

88.     Injustice can be avoided only by enforcement of Defendants' promise. Plaintiff seeks injunctive relief requiring Defendants to process Plaintiff's Venice Music Content ID Materials consistent with Defendants' November 14, 2023 review and reactivation, and damages for the injury caused by Defendants' continued suppression contrary to that review and reactivation.

## SIXTH CAUSE OF ACTION

### Common Law Unfair Competition (New York)

89.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

90.    Defendants' conduct constitutes unfair competition under New York common law. Defendants communicated false backend enforcement designations to Plaintiff's distributor concerning Plaintiff's content, knowing that those designations would cause Plaintiff's distributor to deactivate Plaintiff's monetization. After Defendants' own review and reactivation on November 14, 2023, Defendants have continued to maintain or reapply mechanisms suppressing monetization on Plaintiff's Venice Music Content ID Materials, contrary to the determination of eligibility reflected in that reactivation. Defendants' continuing conduct was undertaken in bad faith and misappropriated the commercial value of Plaintiff's Venice Music Content ID participation—including Plaintiff's distributor-relationship goodwill, business reputation, distributor-account standing, claim-participation standing, associated claim history, and established monetization activity—which Defendants suppressed and appropriated through false backend enforcement designations and distributor-facing penalty pressure. The interests protected by this claim are the distributor-relationship goodwill, business reputation, claim-participation standing, associated claim history, and platform-participation interests that Plaintiff developed through its Venice Music Content ID participation.

91.    As a result, Plaintiff was deprived of commercial advantages developed through its Venice Music Content ID participation, including: (i) revenue streams generated through established Content ID monetization activity administered through Venice Music; (ii) Plaintiff's Content ID reference files, claiming rights, claim-participation standing, and associated claim history within that distributor relationship; and (iii) distributor goodwill, platform-participation status, and established monetization activity connected to Plaintiff's Venice Music Content ID Materials. These are concrete revenue-generating business interests within Defendants' platform-participation system. Lost Content ID revenue is pleaded as a measure of the commercial value

of the business interests, goodwill, and participation standing Defendants impaired through commercial bad faith.

92.     Defendants' bad-faith conduct deprived Plaintiff of the operational benefits of Plaintiff's distributor-relationship goodwill and Plaintiff's standing as a rights holder in good standing within Defendants' Content ID enforcement workflow. The injury Plaintiff seeks to recover under this claim arises from Defendants' bad-faith conduct toward Plaintiff's distributor-relationship interests and Plaintiff's standing within Defendants' enforcement system, not from any deprivation of Plaintiff's exclusive rights to reproduce, distribute, perform, or display Plaintiff's copyrighted sound recordings, which exclusive rights remain unaffected by Defendants' conduct and are not the subject of this claim.

93.     Plaintiff has suffered injury and continues to do so. Plaintiff is entitled to injunctive relief, declaratory relief, and damages. The traditional remedy for unfair competition is injunctive relief to prevent continuing injury to the plaintiff's commercial interests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants as follows:

(A)    Compensatory damages in an amount to be proven at trial, but not less than $75,000, for all lost revenue, profits, and other harms arising from Defendants' tortious interference, fraud, negligent misrepresentation, trade libel, promissory estoppel, and unfair competition;

(B)    Punitive and exemplary damages in connection with Plaintiff's state-law claims, including fraud, trade libel, and unfair competition;

(C)     A permanent injunction against Defendants as set forth in subparagraphs (i) through (xiii) below:

*Scope.* The injunctive relief requested in this subparagraph (C) is directed only at Defendants' challenged conduct toward Plaintiff's Venice Music Content ID Materials and corresponding recording-level identifiers, and is not intended to regulate Defendants' Content ID platform generally. Each provision below addresses a specific mechanism alleged to have caused, maintained, concealed, or enabled the suppression challenged in this action, and each is necessary to make the injunction effective and prevent circumvention, re-labeling, review-routing, claim-throttling, or re-imposition of materially similar suppression.

*Definition.* For purposes of the injunctive relief requested herein, "Plaintiff's Venice Music Content ID Materials" has the meaning set forth in ¶ 10 above, and "Prohibited Grounds" means the challenged 2023 designations, any materially equivalent designation, any unpublished, unidentified, retroactively applied, Plaintiff-specific, or discretionary criterion not tied to an objective published Content ID eligibility rule, any criterion adopted or modified after the filing of this action unless such criterion is published, generally applicable, and applied uniformly to similarly situated rights holders in compliance with the procedures set forth in subparagraphs (iii) and (vi) below, or any third-party channel conduct, whether individual or aggregated, that Plaintiff does not own or control. As used herein, "similarly situated rights holders" means rights holders of undisputed copyright ownership whose reference files and accounts are not subject to enforcement designations or suppression mechanisms of the kind challenged in this action. For the avoidance of doubt, the definition of Plaintiff's Venice Music Content ID Materials includes sound recordings delivered through Venice Music under Plaintiff's BHBIGFLUCE Records label account before or after the filing of this action, to the extent such recordings are subject to the same

Content ID participation, account administration, or enforcement mechanisms described herein. The prohibitions and obligations in subparagraphs (ii) through (xi), where applicable, shall apply to Plaintiff's Venice Music Content ID Materials and to any corresponding reference files identified by the same audio fingerprints, ISRCs, UPCs, asset identifiers, or other recording-level identifiers, when administered through Venice Music or through any other authorized distributor.

(i)    ***Removal of existing designations.*** Defendants shall remove all 'Invalid reference,' 'Potential violation of YouTube monetization policy,' 'pending,' 'under review,' and any other backend enforcement flags, designations, restrictions, or internal classifications currently applied to Plaintiff's Venice Music Content ID Materials. This removal obligation shall apply to those designations as applied to Plaintiff's Venice Music Content ID Materials and to any corresponding reference files identified by the same audio fingerprints, ISRCs, UPCs, asset identifiers, or other recording-level identifiers, when administered through Venice Music or through any other authorized distributor. Defendants shall cease maintaining or reapplying such designations on those reference files based on the same factual predicates that gave rise to the 2023 designations challenged herein. This removal obligation applies to designations tagged to SocialRyse LLC, BHBIGFLUCE Records, or any individual identifier used to register, identify, operate, or tag Plaintiff's Venice Music Content ID account, reference files, or releases. Such identifiers include but are not limited to email addresses, International Standard Recording Codes (ISRCs), Universal Product Codes (UPCs), Content ID asset identifiers, and any other Defendant-assigned identifier. This removal obligation also applies to any designation that links or associates Plaintiff's Venice Music Content ID Materials with any other Defendant-operated music system, service, or monetization mechanism, including but not limited to YouTube Music and Art Tracks. Defendants shall not apply or reinstate any such designation to Plaintiff's Venice Music Content ID Materials

based on the content, conduct, or upload behavior of third-party YouTube channels that Plaintiff does not own or control. Any enforcement action based on third-party channel conduct shall be directed at the responsible channel operators through Defendants' channel-level enforcement tools, not at Plaintiff's Venice Music Content ID Materials. Reinstatement of any designation on grounds not involving third-party channel conduct shall require compliance with subparagraph (iii) below. Defendants shall not communicate, imply, suggest, hint, signal, direct, request, induce, encourage, pressure, or cause, whether formally or informally and whether through written, oral, backend, distributor-facing, or off-platform communications, that any authorized distributor should deactivate, suppress, withhold, reject, remove, decline to reinstate, or otherwise adversely treat Plaintiff's Venice Music Content ID Materials or corresponding recording-level identifiers based on any Prohibited Ground. This prohibition includes any communication, statement, classification, or signal that a reasonable distributor would understand, in context, as a request, signal, or indication that the distributor should take adverse action against Plaintiff's Venice Music Content ID Materials on any Prohibited Ground.

      (ii)    ***Same-terms processing.*** Defendants shall process Plaintiff's Venice Music Content ID Materials in accordance with Defendants' published Content ID eligibility criteria and Defendants' generally applicable rules, policies, technical standards, and revenue-allocation practices, without applying the "Invalid reference" or "Potential violation of YouTube monetization policy" designations challenged in this action, any materially equivalent suppressive designation or mechanism, or any restriction based on the content, conduct, or upload behavior of third-party YouTube channels that Plaintiff does not own or control. Defendants shall not impose on Plaintiff's Venice Music Content ID Materials any terms, restrictions, manual review

requirements, claim-suppression mechanisms, or revenue-allocation adjustments that exceed those imposed under Defendants' published policies or that are predicated on any Prohibited Ground.

(iii)    ***Notice and opportunity to respond.*** Before applying any new backend enforcement flag, reference file designation, monetization suppression, claim throttling, revenue allocation adjustment, match-confidence or threshold adjustment, automated revenue-volume or claim-volume trigger, claim-pending status exceeding Defendants' ordinary processing times, account-level restriction, or other enforcement mechanism on Plaintiff's Venice Music Content ID Materials, Defendants shall provide Plaintiff written notice identifying: (1) the specific content affected and the specific enforcement action proposed (including but not limited to backend flag, reference file designation, monetization suppression, claim throttling, revenue allocation adjustment, match-confidence or threshold adjustment, automated revenue-volume or claim-volume trigger, account-level restriction, or other enforcement mechanism), (2) the specific published rule Plaintiff is alleged to have violated, (3) the specific factual basis for the alleged violation distinct from grounds previously reviewed and determined not to warrant designation, and (4) a reasonable opportunity—not less than 30 days—for Plaintiff to respond. Defendants may apply the proposed designation only after receiving Plaintiff's response and determining in good faith, based on a specific published, generally applicable rule and a specific factual basis, that the designation is warranted. Defendants shall not apply to Plaintiff's Venice Music Content ID Materials any new or amended rule or policy adopted or modified after the filing of this action unless such rule or policy is published, generally applicable, applied uniformly to similarly situated rights holders, and applied in compliance with the procedures set forth in this subparagraph and subparagraph (vi). Defendants shall provide Plaintiff with a written reasoned determination identifying the factual and legal basis for any such decision. Such determination shall not rely on

conduct of third-party YouTube channels Plaintiff does not own or control as the factual basis for designating Plaintiff's Venice Music Content ID Materials, and shall be subject to the appeal mechanism set forth in subparagraph (vi).

(iv)    *No channel-conduct liability.* Defendants shall not apply any backend enforcement designation, monetization suppression, account-level restriction, claim-pending state, review-routing state, claim throttling, revenue-allocation adjustment, match-confidence or threshold adjustment, or other restriction to Plaintiff's Venice Music Content ID Materials based on the content, conduct, upload behavior, visual material, captions, descriptions, metadata, or any other aspect of YouTube channel or video activity, whether considered individually or in the aggregate across multiple videos, channels, or time periods. Channel-level conduct, including conduct on channels operated by Plaintiff if any, is a separate enforcement domain governed by Defendants' channel-level policies and channel-level enforcement tools, and Defendants shall address any alleged channel-level violations through channel-level enforcement mechanisms directed at the responsible channel operators. No channel-level enforcement shall result in any designation, suppression, restriction, pending status, review-routing state, claim throttling, revenue-allocation adjustment, match-confidence or threshold adjustment, or other adverse treatment of Plaintiff's Venice Music Content ID Materials.

(v)    *No circumvention through new designations or policies.* Defendants shall not implement new backend designations, review categories, enforcement mechanisms, or published policy provisions that (a) apply to Plaintiff's Venice Music Content ID Materials but not comparably to other rights holders of undisputed copyright ownership whose reference files and accounts are not subject to enforcement designations or suppression mechanisms of the kind challenged in this action; (b) impose consequences based on third-party channel conduct Plaintiff

does not own or control; or (c) are adopted in response to this injunction with the purpose or effect of subjecting Plaintiff's Venice Music Content ID Materials to the same or materially similar suppression from which this injunction grants relief. Defendants further shall not reinstate, reapply, refresh, rename, replace, or maintain any materially equivalent designation, restriction, review-routing state, match-confidence adjustment, claim-suppression mechanism, or distributor-facing notice that has the same practical effect as the challenged designations.

(vi) *Direct appeal mechanism.* Defendants shall establish and maintain a direct written appeal mechanism accessible to Plaintiff when any enforcement designation affects Plaintiff's Venice Music Content ID Materials. The appeal mechanism shall not require Plaintiff to hold or obtain direct CMS access. Defendants shall issue a written reasoned decision on any appeal within fourteen (14) days of Plaintiff's submission and shall make available to Plaintiff, or to the Court on in camera review, the factual and policy basis for the decision. Monetization suppression, claim withholding, or other adverse enforcement consequences shall be suspended with respect to the content subject to the appeal during the pendency of Defendants' review, and shall remain suspended during the pendency of any motion or proceeding by Defendants seeking a Court order maintaining enforcement, until the Court has issued an order on such motion. Defendants may seek a Court order maintaining enforcement during review only upon a showing by clear and convincing evidence that (1) continued enforcement is necessary to prevent imminent, material, and irreparable harm to Defendants' platform or to specifically named third parties; (2) such harm arises from the inherent characteristics of Plaintiff's Venice Music Content ID Materials themselves and not from the content, conduct, or upload behavior of third-party YouTube channels or videos that Plaintiff does not own or control; (3) the harm cannot be addressed through channel-level enforcement directed at the responsible third-party channel operators; and (4) no less

restrictive alternative would adequately address such harm. Any such motion shall be made in writing and on notice to Plaintiff, and Plaintiff shall have an opportunity to be heard and to submit written argument and rebuttal evidence in opposition before any such Court order is issued. Any such Court order shall be without prejudice to Plaintiff's right to seek modification or dissolution of the order upon a material change in circumstances or new evidence.

(vii)    *Preservation of ordinary platform operations.* Nothing in this injunction shall require Defendants to deviate from their ordinary Content ID operations in ways that would materially disrupt automated processing. The relief ordered here is directed at removing the differential or suppressive treatment of Plaintiff's Venice Music Content ID Materials challenged in this action and preventing future materially similar treatment, not at altering Defendants' automated Content ID system generally. This subparagraph shall not be construed to limit or excuse Defendants' obligations under any other subparagraph of this injunction, and Defendants' compliance with subparagraphs (i) through (vi) and (viii) through (xiii) shall not be deemed a material disruption of automated processing.

(viii)    *No suppression absent completed determination.* Defendants shall not maintain on Plaintiff's Venice Music Content ID Materials any designation, status, flag, classification, hold, or other backend mechanism—including, without limitation, any status in which claims are routed to review under YouTube's published invalid-reference workflow, any "Owned (Claims routed to review)" state, any manual-review routing state, or any equivalent, successor, renamed, or unpublished mechanism producing a similar suppressive effect, and regardless of label or characterization—that suppresses, restricts, withholds, delays, or reduces Content ID monetization, unless Defendants have (a) completed a final determination that the designated content violates a specific, published Content ID rule that identifies objective conduct or content

characteristics constituting the violation. For purposes of this subparagraph, references in Defendants' published rules to 'abuse,' 'error,' 'invalid,' 'discretionary review,' 'suspicious,' or similar discretionary or categorical language shall not satisfy this requirement unless Defendants also identify the specific objective conduct or content characteristic alleged to constitute the violation; (b) identified the specific rule violated, the specific factual basis for the violation, and the specific enforcement action or mechanism being maintained (including but not limited to flag, designation, suppression, claim throttling, revenue allocation adjustment, match-confidence adjustment, account-level restriction, or other enforcement mechanism), all in writing to Plaintiff; and (c) provided the procedural protections set forth in subparagraphs (iii) and (vi) above. The requirements of this subparagraph apply regardless of the terminology, label, classification, or characterization Defendants use. Any mechanism that remains on Plaintiff's Venice Music Content ID Materials for more than fourteen (14) days without all of the requirements of (a), (b), and (c) having been satisfied—whether before the mechanism was applied or within that fourteen-day period—shall be removed by Defendants. Defendants shall not evade the requirements of this subparagraph by renaming, relabeling, reclassifying, or otherwise recharacterizing mechanisms that produce the suppression effect described herein. Nor shall Defendants evade the requirements of this injunction by shifting enforcement, suppression, revenue reduction, or tagging of Plaintiff's Venice Music Content ID Materials to any Defendant-operated backend enforcement layer, Content Manager System (CMS) instance or account, distributor-facing administrative interface, internal enforcement infrastructure, music system, service, or monetization mechanism in a manner that produces the suppression effect described herein. The prohibitions of this subparagraph apply whether Defendants act directly or through Venice Music, other distributor intermediaries, or any other person or entity in active concert or participation with Defendants,

including persons acting at Defendants' direction or pursuant to Defendants' enforcement determinations, policy implementations, eligibility determinations, or platform instructions, to apply, maintain, request, require, or induce the prohibited designations, statuses, restrictions, settings, or mechanisms.

(ix)   ***Good-faith compliance.*** Defendants shall comply with this injunction in good faith, interpreting its requirements in light of their purpose to prevent the differential or suppressive treatment challenged in this action and to prevent suppression of monetization on Plaintiff's Venice Music Content ID Materials. Technical compliance with the literal terms of specific subparagraphs shall not excuse conduct that frustrates the injunction's purpose. In any proceeding concerning compliance with this injunction, Defendants shall bear the burden of demonstrating that any rule or criterion they invoke is published, generally applicable, and applied uniformly to similarly situated rights holders. The Court retains jurisdiction to enforce this injunction and to hold Defendants in contempt for violations, including serial, pretextual, or evasive conduct. Willful violations of this injunction shall be subject to enhanced contempt sanctions, including daily fines, disgorgement of profits derived from the violation, and Plaintiff's attorneys' fees and costs incurred in enforcement. Defendants' obligations under this injunction extend to conduct undertaken directly by Defendants and to conduct undertaken by Venice Music, other distributor intermediaries, or any other person or entity in active concert or participation with Defendants, including persons acting at Defendants' direction or pursuant to Defendants' enforcement determinations, policy implementations, eligibility determinations, or platform instructions. Nothing in this injunction shall limit Plaintiff's right to seek contempt sanctions, supplemental relief, damages, attorneys' fees, costs, or expenses available by motion, supplemental pleading, or separate action for any violation of this injunction or any new and independent tort.

(x)     ***Matching and claim generation.*** Defendants shall operate the Content ID matching and claim-generation functions with respect to Plaintiff's Venice Music Content ID Materials in accordance with Defendants' generally applicable rules, policies, and technical standards, and on terms no less favorable than those applied to rights holders of undisputed copyright ownership whose reference files are not subject to enforcement designations or suppression mechanisms of the kind challenged in this action, including the ordinary processing and revenue allocation of claims in user-uploaded videos containing multiple claimed elements or multiple rights holders. Defendants shall not configure, adjust, suppress, throttle, or otherwise interfere with the matching, detection, or claim-generation processes applicable to Plaintiff's Venice Music Content ID Materials in ways that exceed Defendants' generally applicable technical standards or that are not uniformly applied across reference files of content meeting Defendants' published eligibility criteria. This prohibition applies to any backend configuration, filter, threshold, audio-fingerprint adjustment, match-confidence setting, automated revenue-volume or claim-volume trigger, or other technical mechanism that affects whether Plaintiff's Venice Music Content ID Materials are detected and claimed in user-uploaded videos. The 'reference files of content meeting Defendants' published eligibility criteria' referenced above shall not include reference files of rights holders subject to enforcement designations or suppression mechanisms substantially similar to those challenged in this action.

(xi)     ***Compliance reporting.*** Defendants shall provide Plaintiff with quarterly written reports, delivered within thirty (30) days after the end of each calendar quarter, for a period of not less than three (3) years following entry of this injunction, identifying on a month-by-month basis: (a) any enforcement designation, status, or mechanism applied to Plaintiff's Venice Music Content ID Materials during each month of the reporting period; (b) the specific published rule and factual

basis for any such designation; (c) revenue allocation data for Plaintiff's Venice Music Content ID Materials for each month of the reporting period, including, for claims involving multiple rights holders or multiple claimed elements, data sufficient to show the basis of the allocation applied to Plaintiff's claims; (d) any material changes to Defendants' published Content ID policies during the reporting period that may affect Plaintiff's Venice Music Content ID Materials; and (e) any written communications, and written summaries of any oral communications, between Defendants and authorized distributors regarding the enforcement treatment of Plaintiff's Venice Music Content ID Materials during the reporting period. Plaintiff may seek enforcement of this injunction through motion practice in this Court based on information disclosed in such reports.

(xii) ***Retention of jurisdiction***. This Court shall retain continuing jurisdiction over the parties and this action for purposes of enforcing, interpreting, and modifying this permanent injunction. Plaintiff may bring any motion to enforce compliance with, interpret, or seek modification of this Order on an expedited basis upon a showing of good cause.

(xiii) ***Record preservation and expedited enforcement***. Defendants shall preserve all records, communications, classifications, designations, restrictions, review states, backend statuses, distributor-facing notices, internal directives, and decisional materials concerning Plaintiff's Venice Music Content ID Materials and the corresponding recording-level identifiers, including audio fingerprints, ISRCs, UPCs, and asset identifiers, for the duration of this injunction. Upon Plaintiff's reasonable showing of noncompliance or potential noncompliance, Defendants shall, on expedited schedule and under such terms as the Court directs, (a) provide sworn declarations from named individuals with personal knowledge attesting to compliance, and (b) produce relevant records for in camera review or expedited discovery. The Court may require an appearance if written submissions are insufficient.

(D)    A declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that: (1) Defendants' "Invalid reference" designation applied to Plaintiff's Venice Music Content ID Materials, and the "Potential violation of YouTube monetization policy" sub-category displayed thereunder, are false; (2) Plaintiff's Venice Music Content ID Materials are eligible for Content ID monetization in accordance with Defendants' published Content ID eligibility criteria and revenue-allocation protocols, and on terms no less favorable than those applied to rights holders of undisputed copyright ownership whose reference files and accounts are not subject to enforcement designations or suppression mechanisms of the kind challenged in this action; (3) Defendants owe a duty of ordinary care and honesty in the factual designations they transmit to authorized distributors concerning Plaintiff's content; (4) Defendants' application of enforcement designations to Plaintiff's reference files based on the conduct of third-party YouTube channels that Plaintiff does not own or control constitutes a wrongful basis for such designations; and (5) Defendants' continued maintenance of account-level suppression mechanisms after a determination of eligibility is inconsistent with good-faith operation of the Content ID system;

(E)    Pre- and post-judgment interest at the maximum lawful rate;

(F)    Reasonable attorneys' fees and the costs and expenses of this action to the extent permitted by law; and

(G)    Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: June 10, 2026
New York, NY

Respectfully submitted,


/s/ Courtney K. Davy
**COURTNEY K. DAVY, ESQ.**
Attorney for Plaintiff
299 Broadway, Suite 800
New York, NY 10007
(516) 850-1800
Courtneydavy.esq@gmail.com