**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOCIALRYSE LLC<br>(d/b/a BHBIGFLUCE RECORDS),<br><br>*Plaintiff*,<br><br>vs.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>*Defendants*. | Case No. 1:26-cv-03407-LAK |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS


**I. BACKGROUND ........ 3**

A. Factual Background ........ 3

B. Plaintiff's Allegations in *SocialRyse I* ........ 7

C. Procedural History ........ 9

**II. LEGAL STANDARD ........ 10**

**III. ARGUMENT ........ 11**

A. Plaintiff's claims in this case should be dismissed as barred by *res judicata* ........ 11

B. Plaintiff fails to state a claim for each of its causes of action. ........ 14

1. Plaintiff fails to state a claim for tortious interference with prospective economic advantage (Count 1). ........ 14

2. Plaintiff fails to state a claim for fraud (Count 2). ........ 16

3. Plaintiff fails to state a claim for negligent misrepresentation (Count 3). ........ 18

4. Plaintiff fails to state a claim for trade libel (Count 4). ........ 19

5. Plaintiff fails to state a claim for promissory estoppel (Count 5). ........ 22

6. Plaintiff fails to state a claim for unfair competition (Count 6). ........ 24

C. Plaintiff's claims for tortious interference, unfair competition and trade libel are time-barred. ........ 26

**CONCLUSION ........ 30**

## TABLE OF AUTHORITIES

**Cases**

*Andrew Greenberg, Inc. v. Svane, Inc.*,
36 A.D.3d 1094 (N.Y. App. Div. 2007) ........ 29

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009) ........ 2, 14

*Atl. Richfield Co. v. Farm Credit Bank of Wichita*,
226 F.3d 1138 (10th Cir. 2000) ........ 24

*Bd. of Trs. ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*,
2012 WL 3930112 (S.D.N.Y. Sept. 10, 2012); ........ 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955 (2007) ........ 10

*Bentkowski v. City of New York*,
44 N.Y.3d 611 (2025) ........ 23

*Bilinski v. Keith Haring Found., Inc.*,
96 F. Supp. 3d 35 (S.D.N.Y.),
*aff'd in part,* 632 F. App'x 637 (2d Cir. 2015) ........ 20

*Bongo Apparel, Inc. v. Iconix Brand Grp.*,
Inc., 2008 WL 41341 (N.Y. Sup. Ct. Jan. 2, 2008) ........ 25

*Bullion Trading LLC v. J.P. Morgan Chase Bank, N.A.*,
2026 WL 1786445 (S.D.N.Y. June 22, 2026) ........ 20

*Bytemark, Inc. v. Xerox Corp.*,
342 F. Supp. 3d 496 (S.D.N.Y. 2018) ........ 25, 26

*Cambridge Assoc. v. Inland Vale Farm Co.*,
497 N.Y.S.2d 751 (2d Dept. 1986) ........ 22

*Cameron v. Church*,
253 F. Supp. 2d 611 (S.D.N.Y. 2003) ........ 12

*Cartiga, LLC v. Aquino*,
2025 WL 388804 (S.D.N.Y. Feb. 4, 2025) ........ 15

*Carvel Corp. v. Noonan*,
3 N.Y.3d 182 (2004) ........ 16

*Chao v. Mount Sinai Hosp.*,
2010 WL 5222118 (S.D.N.Y. Dec. 17, 2010),
*aff'd sub nom. Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892 (2d Cir. 2012) ........ 21

*Chira v. Lockheed Aircraft Corp*,
520 F. Supp. 1390 (S.D.N.Y. 1981) ..... 13

*Com. Data Servers, Inc. v. Int'l Bus. Machines Corp.*,
166 F. Supp. 2d 891 (S.D.N.Y. 2001) ..... 25

*Commack Self-Serv. Kosher Meats Inc. v. State*,
270 A.D.2d 687 (N.Y. App. Div. 2000). ..... 28, 29

*Coughlin v. Int'l Bus. Machines Corp.*,
225 A.D.2d 256 (N.Y. App. Div. 1996) ..... 27

*Couns. Fin. Servs., LLC v. Melkersen L., P.C.*,
602 F. Supp. 2d 448 (W.D.N.Y. 2009) ..... 24

*Curtis v. Citibank, N.A.*,
226 F.3d 133 (2d Cir. 2000) ..... 11, 26

*DeMarle v. Videk, Inc.*,
678 F. Supp. 3d 353 (W.D.N.Y. 2023) ..... 18, 23

*Dfinity Found. v. N.Y. Times Co.*,
702 F. Supp. 3d 167 (S.D.N.Y. 2023),
*aff'd*, 2024 WL 3565762 (2d Cir. July 29, 2024) ..... 10

*Direnna v. Christensen*,
57 A.D.3d 408 (N.Y. App. Div. 2008) ..... 29

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
747 F.3d 145 (2d Cir. 2014) ..... 10

*Dragons 516 Ltd. v. Knights Genesis Inv. Ltd.*,
77 Misc. 3d 1223(A) (N.Y. Sup. 2023) ..... 17

*Edmondson v. Raniere*,
751 F. Supp. 3d 136 (E.D.N.Y. 2024) ..... 24

*Enzo Biochem, Inc. v. Amersham PLC*,
981 F. Supp. 2d 217 (S.D.N.Y. 2013) ..... 30

*Exec. Trim Constr., Inc. v. Gross*,
525 F. Supp. 3d 357 (N.D.N.Y.2021) ..... 15

*Ferring B.V. v. Allergan, Inc.*,
4 F. Supp. 3d 612 (S.D.N.Y. 2014) ..... 25

*First Nationwide Bank v. Gelt Funding, Inc.*,
1992 WL 358759 (S.D.N.Y. Nov. 30, 1992) ..... 17

*Garelick v. Carmel*,
141 A.D.2d 501 (2d Dept. 1988) .......... 17

*Godinger Silver Art Ltd. v. Hirschkorn*,
433 F. Supp. 3d 417 (E.D.N.Y. 2019) .......... 15

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
206 F. Supp. 3d 869 (S.D.N.Y. 2016) .......... 30

*Heiser v. Woodruff,*
327 U.S. 726 S. Ct. 853 (1946) .......... 11

*Henneberry v. Sumitomo Corp. of Am.*,
2005 WL 991772 (S.D.N.Y. Apr. 27, 2005) .......... 19

*Henry v. Bank of Am.*,
147 A.D.3d 599 (N.Y. App. Div. 2017) .......... 27, 28

*Herrick v. Grindr LLC*,
765 F. App'x 586 (2d Cir. 2019) .......... 17

*Hydro Invs., Inc. v. Trafalgar Power Inc.*,
227 F.3d 8 (2d Cir. 2000) .......... 18

*In re Time Warner Sec. Litig.*,
9 F.3d 259 (2d Cir. 1993) .......... 19

*In re Vasu*,
129 F. Supp. 2d 113 (D. Conn. 2001) .......... 24

*Jofen v. Epoch Biosciences, Inc.*,
2002 WL 1461351 (S.D.N.Y. July 8, 2002),
*aff'd,* 62 F. App'x 410 (2d Cir. 2003) .......... 24

*Kekovic v. Titan Motor Grp. LLC*,
2023 WL 6385712 (E.D.N.Y. Sept. 29, 2023) .......... 16

*Lamda Sols. Corp. v. HSBC Bank USA, N.A.*,
574 F. Supp. 3d 205 (S.D.N.Y. 2021) .......... 23

*Linkable Networks, Inc. v. Mastercard Inc.*,
184 A.D.3d 418 (N.Y. App. Div. 2020) .......... 27

*M.J. & K. Co. v. Matthew Bender & Co.*,
220 A.D.2d 488 (N.Y. App. Div.1995) .......... 15

*Mandarin Trading Ltd. v. Wildenstein*,
16 N.Y.3d 173 (2011) .......... 19

*Martin v. New Am. Cinema Grp., Inc.*,
2023 WL 2024672 (S.D.N.Y. Feb. 15, 2023)........................................................................ 30

*MatlinPatterson ATA Holdings LLC v. Fed. Express Corp.*
87 A.D.3d 836 (N.Y. App. Div. 2011) ................................................................................ 23

*Nemaizer v. Baker*,
793 F.2d 58 (2d Cir. 1986).......................................................................................... 11, 13

*New York v. Niagara Mohawk Power Corp.*,
263 F. Supp. 2d 650 (W.D.N.Y. 2003) .......................................................................... 29, 30

*Norbrook Lab'ys Ltd. v. G.C. Hanford Mfg. Co.*,
297 F. Supp. 2d 463 (N.D.N.Y. 2003) ................................................................................ 27

*Nungesser v. Columbia Univ.*,
169 F. Supp. 3d 353 (S.D.N.Y. 2016)................................................................................. 22

*Passiglia v. Northwell Health, Inc.*,
252 F. Supp. 3d 129 (E.D.N.Y. 2017) ................................................................................ 24

*Pasternack v. Lab'y Corp. of Am. Holdings*,
27 N.Y.3d 817 (2016) ................................................................................................ 18, 20

*Ravenna v. Christie's Inc.*,
289 A.D.2d 15 (N.Y. App. Div. 2001) ................................................................................ 19

*Red Mountain Med. Holdings, Inc. v. Brill*,
2024 WL 1005561 (2d Cir. Mar. 8, 2024)........................................................................... 30

*Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys.,*
672 F.2d 1095 (2d Cir. 1982)............................................................................................ 26

*Ruder & Finn Inc. v. Seaboard Sur. Co.*,
52 N.Y.2d 663 (1981) ...................................................................................................... 20

*Russell v. Crossland Sav. Bank*,
111 F.3d 251 (2d Cir. 1997)............................................................................................. 19

*Serlin v. Arthur Andersen & Co.*,
3 F.3d 221 (7th Cir. 1993) ................................................................................................ 26

*Sewell v. Bernardin*,
795 F.3d 337 (2d Cir. 2015).............................................................................................. 11

*Smith v. City of New York*,
664 F. App'x 45 (2d Cir. 2016) ......................................................................................... 30

*SocialRyse v. Google, et al.*,
2026 WL 2583089 (S.D.N.Y. Sept. 1, 2026) ("*SocialRyse I*")......................................... passim

*Solmetex, LLC v. Dental Recycling of N. Am., Inc.*,
2017 WL 2840282 (S.D.N.Y. June 26, 2017) .................................................................. 20

*Spinap Corp. v. Cafagno*,
302 A.D.2d 588 (N.Y. App. Div. 2003) ....................................................................... 27, 30

*Sykes v. RFD Third Ave. 1 Assocs*,
15 N.Y.3d 370 (2010) ....................................................................................................... 18

*TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.*,
2017 WL 2627912 (S.D.N.Y. June 16, 2017) .................................................................. 27

*Themed Rests., Inc. v. Zagat Surv., LLC*,
4 Misc. 3d 974 (N.Y. Sup. Ct. 2004),
*aff'd,* 21 A.D.3d 826 (N.Y. App. Div.2005) .................................................................... 21

*Tsatskin v. Kordonsky*,
189 A.D.3d 1296 (N.Y. App. Div. 2020) ......................................................................... 14

*Ugo-Alum v. New York State Dep't of Motor Vehicles,*
2024 WL 3553168 (S.D.N.Y. July 26, 2024) ................................................................... 30

*Waldman v. Vill. of Kiryas Joel*,
207 F.3d 105 (2d Cir. 2000)........................................................................... 10, 11, 12, 13

*Waste Distillation Tech., Inc. v. Blasland & Bouck Eng'rs, P.C.*
136 A.D.2d 633 (N.Y. App. Div. 1988) ........................................................................... 21

*Weitsman v. Levesque*,
2018 WL 1990218 (N.D.N.Y. Apr. 25, 2018) .................................................................. 20

*Yip v. Bd. of Trs. of State Univ. of New York*, 2004 WL 2202594, at *8 (W.D.N.Y. Sept. 29, 2004),
*aff'd sub nom. Yip v. Bd. of Trs. of State Univ. of N.Y.*, 150 F. App'x 21 (2d Cir. 2005). . 16, 28

**Other Authorities**

1B Moore's Federal Practice ¶ 0.405[1] (2d ed. 1996)............................................................ 10

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................................ 10

Fed. R. Civ. P. 9(b) ............................................................................................................. 18

SocialRyse LLC ("Plaintiff") has filed a second suit against Google LLC and YouTube, LLC (colletively, "Defendants") re-asserting allegations that this Court has dismissed with prejudice. *SocialRyse v. Google, et al.*, No. 25-cv-10337-LAK, 2026 WL 2583089 (S.D.N.Y. Sept. 1, 2026) ("*SocialRyse I*").

In *SocialRyse I*, Plaintiff complained of Google's allegedly ongoing enforcement of its policies relating to its copyright monetization system on YouTube. Plaintiff alleged that Google's conduct first caused one of its distributors, Create Music Group, to terminate its relationship with Plaintiff in early 2021. *SocialRyse I*, Dkt. 21 ("*SocialRyse I* Compl.") ¶¶ 21, 23. Plaintiff also alleged that, in 2023, it sought to monetize its music on YouTube again through another distributor named Venice Music Group, and Google again applied enforcement flags to Plaintiff's music recordings. The Court found those claims all to be time-barred, holding that Plaintiff was on notice of its claims against Google in 2021. *SocialRyse I*, 2026 WL 2583089, at *8.

Ten days after motion-to-dismiss briefing concluded in *SocialRyse I*, Plaintiff filed the instant case ("*SocialRyse II*") repeating its 2023 allegations about Venice Music Group, but not any of its pre-2023 allegations. Plaintiff claimed the two cases "plead different legal theories and address different specific factual occurrences, at different times, involving different distributor relationships." Dkt. 18 at 1. But, as reflected in the Court's *SocialRyse I* opinion, 2026 WL 2583089, at *5 (analyzing Plaintiff's allegations about Venice Music), that is not true. Plaintiff's claims in this case either were or should have been raised in *SocialRyse I*, as they are based on the same factual allegations already made in *SocialRyse I*. The only difference is that, in this case, Plaintiff chose to omit the allegations in *SocialRyse I* that this Court found show Plaintiff's claims are untimely. Plaintiff should not be rewarded for its attempt to circumvent the statute of

limitations by splitting its claims across the two cases, and Plaintiff's claims here should be dismissed as claim-precluded.

Additionally, all of Plaintiff's claims should be dismissed for failure to state a claim. Each of Plaintiff's claims merely recites the legal elements of the asserted claims without pleading necessary factual allegations to plausibly suggest the elements of the claim. It is well-settled law that Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and cannot rest on "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).[1] Even assuming the truth of Plaintiff's limited factual allegations, what Plaintiff describes—Google's application of its policies to Plaintiff's catalog—cannot be shoehorned into the asserted New York state-law business torts.

Plaintiff's claims for tortious interference with prospective economic advantage, unfair competition, and trade libel should also be dismissed because they are time-barred for the same reasons this Court dismissed Plaintiff's *SocialRyse I* claims. Plaintiff's claims in *SocialRyse I* were untimely because it was facially clear that Plaintiff was first injured, and knew of its injury, in 2021. *SocialRyse I*, 2026 WL 2583089, at *8. So too here—Plaintiff seeks to recover based on the continuing effects of alleged Google enforcement actions that, as found by the Court in *SocialRyse I*, first caused Plaintiff injury in 2021.

Defendants respectfully request that the Court dismiss Plaintiff's complaint in its entirety with prejudice.

[1] With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability. All emphasis is added unless otherwise indicated.

# I. BACKGROUND[2]

## A. Factual Background

Google operates an online video platform, YouTube. Videos uploaded by users to YouTube sometimes contain copyrighted content (including copyrighted content that the users do not themselves own), so Google has created an automated content detection tool called Content ID. *SocialRyse II* Compl. ¶ 10.[3] Among its capabilities, Content ID "automatically detects" copyrighted audio in user videos. *Id.* If a copyright holder's audio is detected in a video, Content ID "allocates monetization revenue" to "the identified rights holder." *Id.* ¶¶ 10, 13. Content ID's system distributes "proportional revenue" to rights holders, so that revenue generated by a video can be split across multiple system participants if multiple pieces of copyrighted content are embedded in one video. *Id.* ¶¶ 13–14.

Media rights holders who monetize using the Content ID system need not have "direct contractual relationships with" Google. *Id.* ¶ 15. Instead, in order to monetize their copyrighted content on YouTube, rights holders may enter into contracts with "authorized distributors" such as Venice Music or Create Music Group. *Id.* ¶¶ 10, 13. Under those contracts, distributors facilitate underlying rights holders' participation in Content ID, and the distributors may receive a share of the revenue paid out by Content ID. *Id.* ¶¶ 13, 17. Content ID's monetization system plays an important role in YouTube's ecosystem: it ensures that copyright holders are paid for use of their materials by automatically detecting copyrighted audio and distributing to rights holders "proportional revenue allocation" accordingly. *Id.* ¶ 13.

---

[2] For purposes of the motion to dismiss, Defendants accept as true, as they must, all allegations in Plaintiff's complaint. Accordingly, any statements or arguments in the motion to dismiss should not be construed as agreement with the factual accuracy of Plaintiff's allegations.

[3] All citations to the *SocialRyse II* complaint refer to the Second Amended Complaint in this action, Dkt. 8.

One way that Google preserves the health of YouTube's ecosystem is by flagging to distributors enforcement concerns about labels, artists, and other entities who misuse the platform. Google's publicly available enforcement policy specifically prohibits the use of Content ID "to improperly monetize content that is ineligible for monetization on YouTube. This includes content that violates YouTube's community and brand safety guidelines, as well as content prohibited by any applicable laws and regulations."[4] As an illustrative example, Google might flag a bad actor who systematically embeds its own 15-second "original music" into reused content (such as "collections of songs from different artists") in order to get paid for content that would otherwise be ineligible for monetization under YouTube's policies.[5] Such conduct damages YouTube's ecosystem because it diverts revenue away from the original creator of the reused content (in the example, the artists whose songs are reused), and in turn reduces the variety and quality of content that creators make available to YouTube viewers.

Plaintiff is allegedly "a New York rights holder that owns and controls original sound recordings" and seeks to make money from the Content ID system. *SocialRyse II* Compl. ¶ 9. Plaintiff never had a direct contract or Content ID relationship with Google. *Id.* ¶ 15. Instead, Plaintiff alleges it had a relationship with a distributor, Venice Music, through which Venice Music enrolled Plaintiff's sound recordings into Content ID for monetization. *Id.* ¶ 10. According to

---

[4] YouTube Help, *Content Manager Responsibilities and Feature Access*, https://support.google.com/youtube/answer/9142671?hl=en#zippy=%2Ccontent-id-eligiblecontent-policy%2Ccircumventing-systems-policy (last visited Sept. 3, 2026). "It is well-established that courts may take judicial notice of publicly available documents on a motion to dismiss." *Porrazzo v. Bumble Bee Foods*, LLC, 822 F. Supp. 2d 406, 411–12 (S.D.N.Y. 2011).

[5] YouTube Help, *YouTube Channel Monetization Policies*, https://support.google.com/youtube/answer/1311392?hl=en#zippy=%2Cfollow-our-programpolicies (last visited Sept. 3, 2026).

Plaintiff, "in or about May 2023, Plaintiff submitted several original sound recordings through Venice Music's portal for Content ID monetization." *Id.* ¶ 18.

On July 6, 2023, Venice Music wrote to Plaintiff that Venice Music had "received multiple flags from music platforms regarding releases" Plaintiff "had submitted for distribution through Venice" and that "music platforms had flagged releases for" "Potential copyright infringement on delivered sound recordings" and "Ineligible content for monetization on YouTube Content ID.'" *SocialRyse II*, Dkt. 8-1 at 1. After Plaintiff responded claiming that it was the "original producer" of its music assets, *id.* at 2–3, Venice Music replied that Google had flagged one of Plaintiff's recordings, "Zephyr - Louder Actions," *id.* at 2. Venice Music provided Plaintiff a statement that Venice Music represented came from Google: "Our systems detected that it is likely that this reference is being used to circumvent our monetization eligibility requirements by using Content ID to monetize content that is ineligible for monetization." *Id.*

On August 16, 2023, Plaintiff's attorney wrote again to Venice Music to protest Venice Music's deactivation of "compositions by Zephyr: 'Clouds,' 'Believe,' and 'Balloon.'" *SocialRyse II*, Dkt. 8-2. In response, Venice Music replied that it "had previously notified" Plaintiff about its "content being flagged by YouTube. YouTube has flagged [Plaintiff's] releases for violation of its monetization policy," and "YouTube will also flag suspicious claims that appear to be associated with attempts to circumvent YouTube monetization policy." *Id.* at 7–8.

On October 4, 2023, Venice Music informed Plaintiff that its account "is currently under investigation for potential violation of Venice's Terms of Service. The cause of this review is due to repeated flags received from YouTube regarding your catalog submissions." *SocialRyse II*, Dkt. 8-3. Venice Music told Plaintiff that Google had flagged that Plaintiff's "Beautiful Fireworks" and "Forsaken Mic" recordings were "likely used to circumvent our monetization

eligibility requirements." *Id.* Venice Music offered its own explanation: "What YouTube has detected is content from your catalog that is utilize [*sic*] a monetization tactic known as 'hidden recordings' which is a discouraged YouTube monetization practice." *Id.* According to Venice Music, "this is consistent behavior with content flags received from previous catalog releases that we have provided a warning to avoid distributing content that is not in alignment [*sic*] music platform guidelines." *Id.*

After Plaintiff continued to dispute the enforcement rationales Venice Music provided, Venice Music stated: "YouTube has requested further information regarding releases 'Beautiful Fireworks' and 'Forsaken Mic'"—in particular, Plaintiff's attempted monetization of those recordings in two YouTube videos, dated January 2021 and February 2021, that contain compilations of content owned by others (respectively, NBA games and TikToks).[6] *Id.* at 6. Plaintiff alleges that, in response, it provided Venice Music with a purported promotional agreement with TTMedia, "an independent promotional service contractor" with its own YouTube channels. *SocialRyse II* Compl. ¶ 30. Venice Music subsequently replied that it had "shared details regarding the music promotion agreement to the YouTube team"; on November 14, 2023, Venice Music represented to Plaintiff that "Our records show that YouTube has reactivated monetization on the mentioned releases," referring to "Beautiful Fireworks" and "Forsaken Mic." *SocialRyse II*, Dkt. 8-3 at 6, 13–14; Compl. ¶ 31.

Plaintiff alleges that the "November 14, 2023 reactivation" that Venice Music claimed had happened "did not restore Plaintiff's Venice Music Content ID Materials to ordinary automated Content ID treatment." *SocialRyse II* Compl. ¶¶ 32, 34. Plaintiff seeks to recover damages based

[6] The two YouTube videos identified by URL and timestamp in Plaintiff's exhibit, *SocialRyse II*, Dkt. 8-3 at 6, remain available at https://www.youtube.com/watch?v=7OzPYo_yft4 and https://www.youtube.com/watch?v=y4K40UEFvEE (last visited Sept. 3, 2026).

on this allegedly decreased revenue. *Id.* ¶ 72. But Plaintiff's complaint contains no specific, non-conclusory factual allegation tying this alleged decrease in post-November revenue to any alleged action by Google. For instance, Plaintiff does not allege that Venice Music subsequently terminated its relationship with Plaintiff or communicated any other Google enforcement actions to Plaintiff; indeed, Plaintiff does not offer any factual allegation of a specific enforcement action taken by Google after November 2023.

**B. Plaintiff's Allegations in *SocialRyse I***

Plaintiff makes no mention of the fact that, months ago, Plaintiff filed another complaint in a related action that asserted the same allegations. *SocialRyse I* Compl. ¶¶ 40–44 (alleging that Venice Music deactivated Plaintiff's reference files because Google had flagged the recordings as "invalid reference"); Dkt. 21-1 (attaching screenshot from Venice Music).

In that related case, Plaintiff alleged that events pre-dating 2023 are relevant to Plaintiff's allegations about Venice Music. In its *SocialRyse I* complaint, Plaintiff alleged that it had first learned of Google's enforcement against its Content ID assets in 2021. "On or about March 1, 2021" (around the same time the two YouTube videos flagged again in 2023 were first uploaded), a different distributor, Create Music Group ("CMG"), allegedly told Plaintiff it was terminating its agreement to monetize Plaintiff's catalog due to "YouTube's asserted 'circumvention' concerns and related compliance pressures." *SocialRyse I* Compl. ¶¶ 21, 23, 45; *SocialRyse I*, 2026 WL 2583089, at *8 (CMG told Plaintiff it was terminating its contract "only because YouTube had determined that plaintiff's activities violated YouTube's terms of service," leaving CMG with "no choice" but to suspend assets that had been "flagged by YouTube's Abuse team").[7]

[7] This Court may take judicial notice of the allegations in the *SocialRyse I* complaint. *Manta Indus., Ltd. v. TD Bank, Nat'l Ass'n*, 2018 WL 2084167, at *6 (S.D.N.Y. Mar. 29, 2018) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and

As alleged in *SocialRyse I*, Venice Music's deactivation of Plaintiff's assets in 2023 was related: "Venice informed Plaintiff that YouTube had flagged the recordings," and "Venice explained that YouTube had associated the recordings with suspected attempts to circumvent YouTube's monetization policies and that distributors risk penalties if they monetize content YouTube deems ineligible." *SocialRyse I* Compl. ¶¶ 41–47. Plaintiff alleged those 2023 communications from Venice Music further informed Plaintiff that YouTube had been enforcing against Plaintiff's assets since 2021; the 2021 Create Music Group and 2023 Venice Music deactivations were allegedly part of Google's singular, "ongoing enforcement mechanism." *SocialRyse I* Compl. ¶¶ 41, 44 ("The later Venice Music disclosures in 2023" "*revealed both Defendants' role in the original termination and the mechanism of Plaintiff's ongoing exclusion*.").

On September 1, 2026, this Court dismissed all claims in *SocialRyse I* as untimely and the Sherman Act claim on the merits, holding that "plaintiff was or should have been aware of its claims against defendants in 2021." *SocialRyse I*, 2026 WL 2583089, at *8. Relevant to Plaintiff's allegations in the present case, the Court summarized Plaintiff's allegations in *SocialRyse I* relating to Plaintiff's 2023 communications with Venice Music:

> Around May 2023, SocialRyse attempted to reinstate portions of its catalog through Venice Music's self-service portal for Content ID monetization. It uploaded several songs via Venice Music and began earning revenue through Content ID. But shortly thereafter, Venice deactivated the associated reference files. In communications between July and August 2023, Venice informed SocialRyse that YouTube had flagged the recordings and provided SocialRyse with a screenshot showing that its assets had been marked "Invalid reference" and "Potential violation of YouTube monetization policy." Venice Music told SocialRyse that "YouTube had associated the recordings with suspected attempts to circumvent YouTube's monetization policies and that distributors risk penalties if they monetize content YouTube deems ineligible."

---

other related documents that appear in the court records of prior litigation and that relate to the case sub judice.").

*SocialRyse I,* 2026 WL 2583089, at *5. The Court acknowledged that the exact same allegations are at issue in the current case: "SocialRyse has filed a separate complaint against YouTube and Google, also pending before this Court, based on the Venice Music allegations." *Id.* at *6.

In *SocialRyse I*, the Court already found Plaintiff's allegations insufficient to render Plaintiff's claims, which first accrued in 2021, timely. The Court held that, though Plaintiff alleges it learned additional information from Venice Music in 2023 about Google's enforcement actions against Plaintiff, "the mere discovery of corroborating evidence that might enhance a plaintiff's ability to prevail as to its cause of action" will not "suffice to toll the statute of limitations applicable to a claim about which a plaintiff had sufficiently complete notice earlier." *Id.* at *8.

### C. Procedural History

On April 24, 2026—after seeing Google's fully-briefed statute-of-limitations argument applied to the allegations in *SocialRyse I*—Plaintiff filed the present case, alleging claims based on the same enforcement actions alleged in *SocialRyse I* but omitting some of the facts alleged therein. Dkt. 1. Plaintiff amended its complaint twice, and the operative complaint is now Plaintiff's Second Amended Complaint, filed on June 16, 2026, Dkt. 8. After being served for the first time in this case on July 13, 2026, Google moved to relate this case to *SocialRyse I*, Dkt. 16, which this Court granted.

In the complaint, Plaintiff again alleges facts relating to its relationship with Venice Music in 2023, but excludes its own prior allegations that it was first allegedly injured by, and learned of, Google's enforcement in 2021. Based on that incomplete subset of its *SocialRyse I* allegations, Plaintiff asserts six causes of action: Plaintiff alleges that Google tortiously interfered with Plaintiff's prospective economic advantage with Venice Music (Count 1), *SocialRyse II* Compl. ¶¶ 56–62; that Google made statements that constituted fraud (Count 2), *id.* ¶¶ 63–72, negligent

misrepresentation (Count 3), *id.* ¶¶ 73–77, or trade libel (Count 4), *id.* ¶¶ 78–83; that Venice Music's statement that Google had reactivated monetization for two of Plaintiff's assets constituted promissory estoppel (Count 5), *id.* ¶¶ 84–88; and that Google engaged in unfair competition (Count 6), *id.* ¶¶ 89–93.

## II. LEGAL STANDARD

"Res judicata makes a final, valid judgment conclusive on the parties, and those in privity with them, as to all matters, fact and law, that were or should have been adjudicated in the proceeding." *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (citing 1B Moore's Federal Practice ¶ 0.405[1], at III–7 (2d ed. 1996)).

Though courts "accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor," *Dfinity Found. v. N.Y. Times Co.*, 702 F. Supp. 3d 167, 173 (S.D.N.Y. 2023), *aff'd*, 2024 WL 3565762 (2d Cir. July 29, 2024), they do not credit mere "legal conclusions" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *id.* (quoting *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1937). To survive a motion to dismiss, a plaintiff is still required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). In addition, "although factual allegations of a complaint are normally accepted as true on a motion to dismiss, that principle does not apply to general allegations that are contradicted by more specific allegations in the Complaint." *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151–152 (2d Cir. 2014). Dismissal under Fed. R. Civ. P. 12(b)(6) is also "appropriate when a defendant raises a statutory bar, such as lack of timeliness, as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015).

## III. ARGUMENT

### A. Plaintiff's claims in this case should be dismissed as barred by *res judicata*.

"A plaintiff must bring suit against the same defendant on all claims that relate to the same conduct, transaction or event at the same time." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000). This doctrine of *res judicata* is designed to prevent precisely what Plaintiff seeks to do in this case—file a second lawsuit asserting claims that were already brought or should have been brought in *SocialRyse I*, while omitting relevant allegations from that first case in an effort to circumvent the statute of limitations. *Waldman*, 207 F.3d at 110 ("A plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories (with different evidence 'necessary' to each suit)."). Plaintiff's complaint in this case should be dismissed with prejudice as claim-precluded.

"Whether there is claim preclusion depends upon whether the same or connected transactions are at issue and the same proof is needed to support the claims in both suits or, in other words, whether facts essential to the second suit were present in the first suit." *Curtis*, 226 F.3d at 139. A dismissal with prejudice "constitutes a final judgment with the preclusive effect of *res judicata* not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (quoting *Heiser v. Woodruff,* 327 U.S. 726, 66 S. Ct. 853, 857 (1946)).

Here, Plaintiff's claims are squarely precluded by the Court's dismissal with prejudice of *SocialRyse I*. The Court's *SocialRyse I* opinion makes clear that facts essential to *SocialRyse II* were also present in *SocialRyse I*. Indeed, the Court's dismissal was based on facts alleged in the *SocialRyse I* complaint exactly mirroring Plaintiff's allegations here: Plaintiff "attempted to reinstate portions of its catalog through Venice Music's self-service portal for Content ID monetization"; Plaintiff "uploaded several songs via Venice Music and began earning revenue

through Content ID"; "Venice deactivated the associated reference files," and "informed SocialRyse that YouTube had flagged the recordings,"; Venice "provided SocialRyse with a screenshot showing that its assets had been marked 'Invalid reference' and 'Potential violation of YouTube monetization policy'"; and "Venice Music told SocialRyse that 'YouTube had associated the recordings with suspected attempts to circumvent YouTube's monetization policies and that distributors risk penalties if they monetize content YouTube deems ineligible." *SocialRyse I,* 2026 WL 2583089, at *5; *see also SocialRyse II* Compl. ¶¶ 18, 20, 21, 23 (alleging these same facts). The Court further acknowledged that the same Venice Music allegations in *SocialRyse I* are the basis for Plaintiff's claims in this case: "SocialRyse has filed a separate complaint against YouTube and Google, also pending before this Court, based on the Venice Music allegations." 2026 WL 2583089 at *6, *8. Thus, because "the facts essential to the second were already present in the first," claim preclusion applies against Plaintiff's claims in this case. *Waldman*, 207 F.3d at 110–11; *Brodsky v. N.Y.C. Campaign Fin. Bd. by Weisman*, 796 F. App'x 1, 5–6 (2d Cir. 2019) (dismissing as barred by *res judicata* second suit that alleged a different statutory claim based on the same facts); *Cameron v. Church*, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003) ("Because Plaintiff's *Cameron II* claims are ones that were resolved on their merits in *Cameron I,* Plaintiff is precluded from pursuing them here.").

Plaintiff's prior assertion that the two actions nonetheless "plead different legal theories and address different specific factual occurrences," Dkt. 2, does not overcome that Plaintiff's claims are precluded. *Chira v. Lockheed Aircraft Corp.*, 520 F. Supp. 1390, 1391 (S.D.N.Y. 1981) ("Plaintiff cannot have another bite at the apple by simply reorganizing and restructuring his legal arguments."). For one, the two cases assert similar damages theories and seek similar injunctive relief based on the same factual allegations. *Compare SocialRyse I* Compl. at 45–46 (requesting

compensatory damages based on "Plaintiff's demonstrated revenue trajectory prior to YouTube's interference" and an injunction requiring Google to remove all "enforcement flags currently applied to Plaintiff's catalog in Defendants' systems"), *with SocialRyse II* Compl. at 46–59 (requesting compensatory damages based on "all lost revenue, profits, and other harms arising from Defendants' tortious interference" and other alleged torts, and an injunction requiring Google to "remove all" "backend enforcement flags, designations, restrictions, or internal classifications currently applied to Plaintiff's Venice Music Content ID Materials").

Moreover, claim preclusion applies so long as "all relevant issues" "could have been but were not raised and litigated in the suit" that preceded. *Nemaizer*, 793 F.2d at 61; *Waldman*, 207 F.3d at 110. And there can be no dispute that Plaintiff "was aware, during the prior actions, of the essential issues and facts asserted in the present case," and even raised "the same substantial body of evidence and the same core grievance" in the first suit. *Waldman v. Vill. of Kiryas Joel*, 39 F. Supp. 2d 370, 378 (S.D.N.Y. 1999); *compare, e.g.*, *SocialRyse I* Compl. ¶¶ 42, 44 (alleging "Venice informed Plaintiff that YouTube had flagged the recordings and provided Plaintiff with a screenshot showing, for the first time, that Plaintiff's assets were marked 'Invalid reference' and 'Potential violation of YouTube monetization policy'"), *with SocialRyse II* Compl. ¶ 23 ("Venice Music provided Plaintiff with a screenshot showing Defendants' backend 'Invalid reference' designation" "with 'Potential violation of YouTube monetization policy' displayed as the stated sub-category under that designation."). To the extent the legal claims asserted in Plaintiff's two cases vary, Plaintiff chose to withhold from *SocialRyse I* those claims that it now asserts in *SocialRyse II*. *SocialRyse II* contains no allegations that would justify the absence of those claims from *SocialRyse I*. *Curtis,* 226 F.3d at 140–41. Plaintiff could have raised its "state-law tort and equitable claims" "arising from specific events in 2023 in connection with Plaintiff's distributor

relationship with Venice Music," Dkt. 2, in *SocialRyse I*, but chose not to. That gamesmanship should not be rewarded with a second bite at the apple asserting repackaged claims based on the same allegations, and the Court should dismiss the complaint with prejudice as barred by *res judicata*.

**B. Plaintiff fails to state a claim for each of its causes of action.**

Setting that aside, all of Plaintiff's claims also fail to state a claim. For the avoidance of doubt, Plaintiff's claims fail to state a claim whether taken together with the allegations and dismissal with prejudice of *SocialRyse I*, or standing alone. Plaintiff has not pleaded the requisite elements for any of its claims. Plaintiff instead merely restates the underlying legal elements, but that is not enough to survive a motion to dismiss. Plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949. Plaintiff has not.

1. Plaintiff fails to state a claim for tortious interference with prospective economic advantage (Count 1).

"To establish a claim of tortious interference with prospective economic advantage, a plaintiff must demonstrate that the defendant's interference with its prospective business relations was accomplished by wrongful means or that the defendant acted for the sole purpose of harming the plaintiff." *Tsatskin v. Kordonsky*, 189 A.D.3d 1296, 1298 (N.Y. App. Div. 2020).

Plaintiff fails to allege that Defendants "acted for the sole purpose of harming" Plaintiff. *Tsatskin*, 189 A.D.3d at 1298. To fulfill this element, Plaintiff must allege that "the motive for the interference" was "solely malicious." *M.J. & K. Co. v. Matthew Bender & Co.*, 220 A.D.2d 488, 490 (N.Y. App. Div. 1995); *Exec. Trim Constr., Inc. v. Gross*, 525 F. Supp. 3d 357, 372–73 (N.D.N.Y. 2021). Plaintiff must "differentiate" a defendant's "economic self-interest" from malicious motive, because actions "motivated by economic self-interest" "cannot be characterized

as solely malicious." *CoraMed USA, LLC v. Alexion Pharms., Inc.*, 695 F. Supp. 3d 251, 270 (E.D.N.Y. 2023). Plaintiff fails to meet this standard.

Plaintiff does not allege any specific facts plausibly pleading that Google acted for the sole purpose of harming Plaintiff, rather than legitimate enforcement of policies on its platform. For example, Plaintiff's complaint focuses on the allegation that Plaintiff owned the copyrights for its assets, *SocialRyse II* Compl. ¶ 46, yet also acknowledges that Google can have other, legitimate enforcement rationales beyond whether Plaintiff owned the copyrights, such as needing to allocate revenue to copyright holders "proportional" to their rightful share. Plaintiff therefore failed to plead that Google acted for the sole purpose of harming Plaintiff. *CoraMed*, 695 F. Supp. 3d at 270; *Godinger Silver Art Ltd. v. Hirschkorn*, 433 F. Supp. 3d 417, 427 (E.D.N.Y. 2019) (dismissing claim where plaintiffs alleged that defendant acted "with the intent to interfere" and "to squelch competition from Plaintiffs," but "Plaintiffs make no plausible allegation" that defendant "acted for any reason other than his earnest, subjectively held belief that plaintiffs were, in fact, infringing his patents"); *Cartiga, LLC v. Aquino*, 2025 WL 388804, at *10–11 (S.D.N.Y. Feb. 4, 2025) (collecting cases dismissing claims that failed "to meet the demanding standard" that defendant "acted with the sole purpose of harming" plaintiff rather than in "its own economic interest").

Nor has Plaintiff pleaded wrongful means, which requires pleading that the defendant's conduct "was not lawful," but amounts to "a crime or an independent tort." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004). Plaintiff alleges that it pleaded an independent tort, fraud, as the wrongful means for its tortious interference claim. However, as explained below, Plaintiff cannot have pleaded fraud because it does not allege that Google made any statements to *Plaintiff*. *Infra* pp. 16–18. For a tortious interference with prospective economic advantage claim, "without

more specific allegations, the conclusory statement that a defendant provided false information does not rise to the level of wrongful means." *Kekovic v. Titan Motor Grp. LLC*, 2023 WL 6385712, at *12 (E.D.N.Y. Sept. 29, 2023). Because Plaintiff has pleaded neither element that can establish a tortious interference with prospective economic advantage claim, Plaintiff's claim should be dismissed.

2. <u>Plaintiff fails to state a claim for fraud (Count 2).</u>

"Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact (2) which the defendant knew to be false, (3) made with the intention of inducing reliance, (4) upon which the plaintiff reasonably relied, and (5) which caused injury to the plaintiff." *Yip v. Bd. of Trs. of State Univ. of New York*, 2004 WL 2202594, at *8 (W.D.N.Y. Sept. 29, 2004), *aff'd sub nom. Yip v. Bd. of Trs. of State Univ. of N.Y.*, 150 F. App'x 21 (2d Cir. 2005).

Plaintiff fails to allege the basic elements of a fraud claim. Plaintiff alleges fraud based on the "invalid reference" designation in Google's "Content ID enforcement infrastructure." *SocialRyse II* Compl. ¶ 65. But Google never communicated anything about Content ID directly to Plaintiff. By Plaintiff's own admission, Google "transmitted the designations *to Venice Music* through their backend enforcement system." *Id.* ¶ 67. At no point does Plaintiff allege that *Google* made an allegedly fraudulent statement to *Plaintiff* that its assets were "invalid," which defeats Plaintiff's fraud claim. *Dragons 516 Ltd. v. Knights Genesis Inv. Ltd.*, 77 Misc. 3d 1223(A) (N.Y. Sup. 2023) (dismissing fraud claim where "there are no factual allegations that these defendants had any communications with" plaintiff); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179 (2011) (dismissing fraud claim "in the absence of allegations creating a bridge between" plaintiff and defendant); *Garelick v. Carmel,* 141 A.D.2d 501, 502, 529 (2d Dept. 1988)

("complaint must set forth all of the elements of fraud including the making of material representations by the defendant to the plaintiff."). And because Plaintiff alleges that Google made the statement not to Plaintiff but on its internal platform to which Plaintiff had no access, *SocialRyse II* Compl. ¶ 37, it has also failed to plausibly allege any facts to suggest that Google *intended* to induce Plaintiff's reliance on that statement. *Dragons 516 Ltd.*, 77 Misc. 3d 1223(A) ("Dragons does not allege any facts from which it could be inferred that the Ceruzzi Defendants intended these documents for Dragons.").

Plaintiff also fails to allege the element of reasonable reliance, let alone any that caused Plaintiff's injury. Plaintiff claims that it relied on Google's statements because "it would not have disclosed the non-public TTMedia agreement or undertaken that response process absent Defendants' communicated designations." *SocialRyse II* Compl. ¶ 71. But Plaintiff does not plausibly allege that this claimed reliance—of sending documents to its business partner, Venice Music—caused it any injury. *First Nationwide Bank v. Gelt Funding, Inc.*, 1992 WL 358759, at *10 (S.D.N.Y. Nov. 30, 1992) ("Under New York law, the plaintiff must show that he was injured as a direct and proximate result of his reliance on the defendant's misrepresentations."); *Herrick v. Grindr LLC*, 765 F. App'x 586, 592 (2d Cir. 2019) (affirming dismissal of fraud claim where plaintiff would have suffered the same harm even if he had never seen the allegedly fraudulent statement). Plaintiff's conclusory allegation that it suffered "injury" that "resulted from Plaintiff's reliance on Defendants' representations," *SocialRyse II* Compl. ¶ 71, does not suffice to properly allege fraud, which must be alleged with particularity. Fed. R. Civ. P. 9(b); *DeMarle v. Videk, Inc.*, 678 F. Supp. 3d 353, 364 (W.D.N.Y. 2023) (dismissing allegations that amount to "a legal conclusion, rather than factual allegations supporting reasonable reliance"). Allegations about Venice Music's purported reliance, *SocialRyse II* Compl. ¶ 76, do not rescue Plaintiff's fraud

claim, as New York courts decline to recognize third-party reliance as a basis for a fraud claim. *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 829 (2016).

3. Plaintiff fails to state a claim for negligent misrepresentation (Count 3).

"Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

*First*, Plaintiff's negligent misrepresentation claim fails for the same reason its fraud claim did: it does not allege that Google misrepresented anything to *Plaintiff*, much less that Google made a statement to Plaintiff that it knew was "desired by the plaintiff for a serious purpose." *Sykes v. RFD Third Ave. 1 Assocs.*, 15 N.Y.3d 370, 373 (2010) (affirming dismissal where there was "no indication" that plaintiff would hear the statement).

*Second*, Plaintiff fails to allege any special relationship between Google and Plaintiff. When evaluating whether such a relationship exists, courts consider: "(1) whether the person making the representation held or appeared to hold unique or special expertise; (2) whether a special relationship of trust or confidence existed between the parties; and (3) whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Henneberry v. Sumitomo Corp. of Am.*, 2005 WL 991772, at *10 (S.D.N.Y. Apr. 27, 2005). Plaintiff alleges that it had "a specific operational relationship in which Defendants knew, or had access to records identifying, Plaintiff as the rights holder associated with the designated content,

identified Plaintiff's content by asset identifier and audio fingerprint, and knew Venice Music would act on Defendants' designations with consequences for Plaintiff specifically." *SocialRyse II* Compl. ¶ 74. The bare allegation that Google operated the Content ID system into which Venice Music Group uploaded Plaintiff's assets does not allege a special relationship between Google and Plaintiff. *In re Time Warner Sec. Litig.,* 9 F.3d 259, 271 (2d Cir. 1993) ("New York strictly limits negligent misrepresentation claims to situations involving actual privity of contract between the parties or a relationship so close as to approach that of privity."); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011) ("lack of allegations showing a relationship with defendant mandates dismissal of this claim"); *Ravenna v. Christie's Inc.*, 289 A.D.2d 15, 16 (N.Y. App. Div. 2001) ("one-time meeting, which did not even create a business relationship, cannot be said to have created a relationship of trust and confidence").

*Third*, Plaintiff also fails to allege reasonable reliance as to its negligent misrepresentation claim. As with its fraud claim, Plaintiff does not plausibly allege that Google, in listing the "invalid reference" tag on an internal platform to which Plaintiff did not have access, intended for Plaintiff to see that information, let alone rely on it. *Russell v. Crossland Sav. Bank*, 111 F.3d 251, 257 (2d Cir. 1997) (holding that a plaintiff must show that the defendant knew "that the *plaintiff* intended to rely and act upon" the information (emphasis in original)). Plaintiff alleges only that "*Venice Music* relied on the designations by deactivating Plaintiff's reference files and terminating Plaintiff's monetization." *SocialRyse II* Compl. ¶ 76. But third-party reliance, as in a fraud claim, cannot sustain a negligent misrepresentation claim. *See Pasternack*, 27 N.Y.3d at 829.

4. <u>Plaintiff fails to state a claim for trade libel (Count 4).</u>

To allege a trade libel or disparagement of goods claim, Plaintiff must allege that the defendant "published a defamatory statement directed at the quality of a business's goods and must

prove that the statements caused special damages." *Bilinski v. Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 51 (S.D.N.Y.), *aff'd in part,* 632 F. App'x 637 (2d Cir. 2015). Plaintiff must also allege malice. *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 671 (1981).

*First*, Plaintiff does not plausibly allege that Google's "invalid reference" tag was directed at the quality of Plaintiff's recordings, as opposed to a statement about the application of YouTube's policies for monetization. *Weitsman v. Levesque*, 2018 WL 1990218, at *5 (N.D.N.Y. Apr. 25, 2018) (dismissing claim where "Plaintiffs have failed to allege that Defendant made any statements denigrating the quality of the business' services or products"); *Bullion Trading LLC v. J.P. Morgan Chase Bank, N.A.*, 2026 WL 1786445, at *4 (S.D.N.Y. June 22, 2026) (collecting cases that dismiss claims that allege statements about a business's reputation or behavior rather than its products).

*Second*, Plaintiff does not allege malice. "Malice requires either a showing of 'actual malice,' i.e., that the statements were knowingly false or made with reckless disregard as to their falsity; or 'common law malice,' i.e., the statements were made solely out of spite or ill will." *Solmetex, LLC v. Dental Recycling of N. Am., Inc.*, 2017 WL 2840282, at *6 (S.D.N.Y. June 26, 2017). The Complaint pleads neither.

Plaintiff does not allege actual malice because it does not allege that Google knew its "invalid reference" tag was false as applied to Plaintiff. At most, Plaintiff alleges that Google knew that "Plaintiff held the exclusive rights necessary for Content ID participation, enrollment, and monetization of the flagged recordings." *SocialRyse II* Compl. ¶ 81. Knowledge about whether Plaintiff held the relevant "exclusive rights" does not address whether Google knew the "invalid reference" tag—which was an application of Google's own enforcement policy concerning more than just ownership of "exclusive rights," *SocialRyse II* Compl. ¶¶ 14, 18—was

false. *Themed Rests., Inc. v. Zagat Surv., LLC*, 4 Misc. 3d 974, 982 (N.Y. Sup. Ct. 2004), *aff'd,* 21 A.D.3d 826 (N.Y. App. Div. 2005) (dismissing trade libel claim where "no portion of the pleading" "satisfactorily pleads defendant made a defamatory statement with knowledge of falsity of the statement or acted with such reckless disregard of truth that the publisher or author in fact entertained serious doubts as to the truth of his publication").[8]

Plaintiff also does not allege common law malice because it does not plead facts plausibly suggesting that Google's statement was not a legitimate enforcement action within its Content ID system, but made solely out of spite or ill will or "of a kind calculated to prevent others from dealing with the business" of Plaintiff. *Waste Distillation Tech., Inc. v. Blasland & Bouck Eng'rs, P.C.*, 136 A.D.2d 633, 633 (N.Y. App. Div. 1988); *Chao v. Mount Sinai Hosp.*, 2010 WL 5222118, at *12 (S.D.N.Y. Dec. 17, 2010), *aff'd sub nom. Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892 (2d Cir. 2012) (dismissing trade libel claim where plaintiff failed to show malice given "the fact that the defendants were acting" "to investigate research misconduct").

*Third*, Plaintiff failed to allege with specificity that any statement by Google caused special damages. "An adequate pleading of special damages must clear several hurdles. First, special damages are limited to losses having pecuniary or economic value, and must be fully and accurately stated, with sufficient particularity to identify actual losses." *Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 410 (S.D.N.Y. 2021). Special damages must also be "related causally to the alleged tortious acts." *Cambridge Assoc. v. Inland Vale Farm Co.*, 497 N.Y.S.2d

---

[8] Plaintiff also alleges that any continued application of enforcement flags was done with actual malice because, by allegedly reactivating two of Plaintiff's assets, Google had admitted "that the specific flagged content was" actually "eligible for renewed monetization." *SocialRyse II* Compl. ¶ 69. That allegation does not suggest actual malice. Reactivating certain of Plaintiff's assets would not suggest that Google flagged those assets, or any others, with knowledge that its flags were false.

751, 753 (2d Dept. 1986). Here, Plaintiff attempts to allege damages by providing its monthly revenue before and after Google's alleged statement regarding reactivation, with no factual allegation to suggest a causal relationship between Google's alleged enforcement flags for certain of Plaintiff's assets and the allegedly large decrease in Plaintiff's total monthly revenue. Plaintiff offers only the conclusory statement that its "revenue collapse occurred without any change in Plaintiff's Venice Music Content ID Materials, Plaintiff's distributor, or the accessibility of third-party videos incorporating Plaintiff's music on Defendants' platform." *SocialRyse II* Compl. ¶ 34. That is not enough to plead specific, quantified damages that were "the natural and immediate consequence of the disparaging statements" in particular. *Soter Techs.*, 523 F. Supp. 3d at 410.

5. <u>Plaintiff fails to state a claim for promissory estoppel (Count 5).</u>

"Promissory estoppel requires a plaintiff to prove three elements: (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the promisee, and (3) unconscionable injury to the relying party as a result of the reliance." *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 374 (S.D.N.Y. 2016). Plaintiff has pleaded none.

*First*, Plaintiff fails to allege a clear and unambiguous promise on the part of Defendants. Plaintiff alleges that "Defendants, through Venice Music, communicated to Plaintiff a clear and definite determination that 'YouTube has reactivated monetization on the mentioned releases.'" *SocialRyse II* Compl. ¶ 85. Plaintiff's own attached exhibit containing this alleged communication, which controls over Plaintiff's preferred framing in its complaint,[9] shows that Venice Music wrote to Plaintiff: "Our records show that YouTube has reactivated monetization on the mentioned releases." *SocialRyse II*, Dkt. 8-3 at 14. That is not a promise by Google to

[9] *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) ("Where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true.").

Plaintiff, much less a "clear and unambiguous" one. *DeMarle*, 678 F. Supp. 3d at 364; *MatlinPatterson ATA Holdings LLC v. Fed. Express Corp.*, 87 A.D.3d 836, 842 (N.Y. App. Div. 2011) (dismissing promissory estoppel claims where plaintiff "does not allege, and the evidence does not indicate, any contact between" itself and the defendant "let alone any promises"). In *DeMarle*, the court dismissed the plaintiff's claim where she "simply alleges that" her decedent husband "was told that the defendant would pay the policy premiums" at issue. 678 F. Supp. 3d at 364. Here, too, the complaint "lacks any factual enhancement to support an inference that [Google] made a clear and unambiguous promise" to Plaintiff. *Id.*

Moreover, even had Google communicated with Plaintiff, the alleged statement that "YouTube has reactivated monetization on the mentioned releases" is "too vague" and "too indefinite" to qualify as a "clear and unambiguous promise." *Bd. of Trs. ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*, 2012 WL 3930112, at *6 (S.D.N.Y. Sept. 10, 2012); *Bentkowski v. City of New York*, 44 N.Y.3d 611, 619 (2025) (no cognizable promise where the language was "descriptive and for informational purposes only" and "in the present tense"); *Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, 574 F. Supp. 3d 205, 215 (S.D.N.Y. 2021) ("A party willing to act is merely inclined or favorably disposed in mind to do so, which falls short of a declaration to do or not do, as required by a claim for promissory estoppel."); *DeMarle*, 678 F. Supp. 3d at 364 ("conclusory allegation lacks any factual enhancement to support an inference that [Defendants] made a clear and unambiguous promise").

*Second*, Plaintiff's conclusory allegations of reliance do not suffice. Plaintiff alleges that it "reasonably and foreseeably relied on Defendants' reactivation representation by delaying remedial action and continuing to await ordinary monetization treatment, based on the reasonable expectation that the reactivation would operate as represented." *SocialRyse II* Compl. ¶ 86. A

mere alleged delay in filing suit does not constitute detrimental reliance. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). Further, Plaintiff has not alleged that it did anything differently in reliance on Google's alleged promise. *Edmondson v. Raniere*, 751 F. Supp. 3d 136, 175 (E.D.N.Y. 2024) ("if the person who was allegedly deceived by the misrepresentation (plaintiff or not) would have acted in the same way regardless of the misrepresentation, then the misrepresentation cannot be a but-for, much less proximate, cause of the plaintiffs' injury."); *Passiglia v. Northwell Health, Inc.*, 252 F. Supp. 3d 129, 138 (E.D.N.Y. 2017) ("the amended complaint is devoid of any facts from which it may reasonably be inferred that plaintiff changed her position in reliance on that belief").

Nor has Plaintiff alleged any injury "by reason of [its] reliance." *Couns. Fin. Servs., LLC v. Melkersen L., P.C.*, 602 F. Supp. 2d 448, 452 (W.D.N.Y. 2009). Plaintiff has not alleged any plausible causal tie between its alleged delay in bringing suit and its alleged injury of reduced monetization. *Jofen v. Epoch Biosciences, Inc.*, 2002 WL 1461351, at *8 n.3 (S.D.N.Y. July 8, 2002), *aff'd,* 62 F. App'x 410 (2d Cir. 2003); *In re Vasu*, 129 F. Supp. 2d 113, 121 (D. Conn. 2001) (plaintiff's "conclusory claim of detrimental reliance, unsupported by any factual allegations of actual reliance, is also insufficient to support a claim for promissory estoppel").

6. Plaintiff fails to state a claim for unfair competition (Count 6).

New York law recognizes seven bases for an unfair competition claim: "(1) monopoly;[10] (2) restraint of trade; (3) trade secrets; (4) trademark or trade name infringement; (5) palming off; (6) misappropriation; and (7) false labeling or advertising." *Bongo Apparel, Inc. v. Iconix Brand Grp.*, Inc., 2008 WL 41341, at *13 n.2 (N.Y. Sup. Ct. Jan. 2, 2008). Plaintiff's complaint does not

[10] In *SocialRyse I*, the Court already held that Plaintiff's Sherman Act monopolization claim in that case, based on identical factual allegations, failed to state a claim. *SocialRyse I,* 2026 WL 2583089, at *10.

identify which theory of unfair competition it is pursuing, and does not allege facts sufficient for any of these theories. "The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 505 (S.D.N.Y. 2018). Allegations of misappropriation must "allow the reader to understand what specifically was misappropriated and to evaluate plaintiff's property rights in it." *Com. Data Servers, Inc. v. Int'l Bus. Machines Corp.*, 166 F. Supp. 2d 891, 895 (S.D.N.Y. 2001).

Plaintiff's conclusory allegation that Google "misappropriated the commercial value of Plaintiff's Venice Music Content ID participation" does not plead an unfair competition claim. *SocialRyse II* Compl. ¶ 90. For one, that bare restatement of a legal element is unsupported by any factual allegations: the Complaint does not identify what "the commercial value of Plaintiff's Venice Music Content ID participation" is, and Plaintiff has not identified any way in which Google took for itself, made use of, or somehow benefited from (*i.e.*, misappropriated) anything belonging to Plaintiff. *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 629–30 (S.D.N.Y. 2014) (dismissing unfair competition claim where "Plaintiffs' generalized, conclusory statements fail to specify what or how was misappropriated."). Plaintiff therefore has not pleaded that Google took "the skill, expenditures, and labors of a competitor," or that it misappropriated "a benefit or property right belonging to another." *Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982); *Bongo Apparel*, 18 Misc. 3d 1108(A) (dismissing unfair competition claim where plaintiffs "fail to allege the bad faith misappropriation of a commercial advantage or property which belonged exclusively to" them and where "plaintiff does not allege that defendants sought to capitalize on the [plaintiff's] name and/or

reputation"). "The tort does not have boundless application as a remedy for unfair trade practices"; "the primary concern in unfair competition is the protection of a business from another's misappropriation of the business organization or its expenditure of labor, skill, and money." *Bytemark*, 342 F. Supp. 3d at 505.

**C. Plaintiff's claims for tortious interference, unfair competition and trade libel are time-barred.**

Plaintiff's tortious interference, unfair competition, and trade libel claims are also untimely. When assessing the timeliness of Plaintiff's claims in *SocialRyse II*, the Court should consider Plaintiff's factual allegations in *SocialRyse I* and *SocialRyse II*—as well as the dismissal with prejudice of *SocialRyse I*—together. Plaintiff should not be permitted to file a duplicative suit omitting certain allegations in order to avoid the statute of limitations. *Curtis*, 226 F.3d at 140 ("plaintiffs may not file duplicative complaints in order to expand their legal rights."); *James v. AT&T Corp.*, 334 F. Supp. 2d 410, 412 (S.D.N.Y. 2004) ("Filing a second identical action is not an appropriate way to gain a more advantageous statute of limitations."); *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 224 (7th Cir. 1993) ("the rules nowhere contemplate the filing of duplicative lawsuits to avoid the statutes of limitations").

The statute of limitations bars Plaintiff's claims for tortious interference with prospective economic advantage, unfair competition, and trade libel. The statute of limitations for New York tortious interference and unfair competition claims is three years. *Linkable Networks, Inc. v. Mastercard Inc.*, 184 A.D.3d 418, 419 (N.Y. App. Div. 2020); *Norbrook Lab'ys Ltd. v. G.C. Hanford Mfg. Co.*, 297 F. Supp. 2d 463, 491 (N.D.N.Y. 2003). And the statute of limitations for Plaintiff's New York trade libel claim is one year. *TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.*, 2017 WL 2627912, at *4 (S.D.N.Y. June 16, 2017). On the face of Plaintiff's duplicative complaints in *SocialRyse I* and *SocialRyse II*, and as this Court held in *SocialRyse I,* Plaintiff's

injury occurred and its claims accrued in 2021. The harm Plaintiff asserts in this case is the continuing effect of alleged 2021 Google conduct, of which Plaintiff alleges it was aware since 2021. Plaintiff's claims are therefore untimely—just as this Court has already held.

Plaintiff's claims accrued in 2021 when Plaintiff was first allegedly injured by Google's enforcement against Plaintiff's assets. *SocialRyse I*, 2026 WL 2583089, at *7–8. Business tort causes of action accrue "at the time that the wrongful act first injured plaintiff." *Henry v. Bank of Am.*, 147 A.D.3d 599, 601 (N.Y. App. Div. 2017); *Coughlin v. Int'l Bus. Machines Corp.*, 225 A.D.2d 256, 258 (N.Y. App. Div. 1996) (applying the "general principle" that a tort claim "accrues when one is *first* injured as a result of another's wrongdoing"). "Plaintiff does not dispute that defendants committed each tort in 2021 and caused plaintiff to suffer damages that year." *SocialRyse I*, 2026 WL 2583089, at *7–8. "The wrongful act first injured plaintiff," and Plaintiff's claim therefore accrued, in 2021. *Henry*, 147 A.D.3d at 601; *Spinap Corp. v. Cafagno*, 302 A.D.2d 588, 588 (N.Y. App. Div. 2003) (tortious interference claim accrued when plaintiff was first injured by defendant's solicitation of its customers).

That Plaintiff alleges it continued to suffer injury in 2023 resulting from Google's 2021 enforcement actions does not change that Plaintiff's claims accrued in 2021.[11] The statute of limitations does not reset simply because a plaintiff continues to feel the effects of allegedly unlawful conduct years later. *Commack Self-Serv. Kosher Meats Inc. v. State*, 270 A.D.2d 687, 688 (N.Y. App. Div. 2000). "The distinction is between a single wrong that has continuing effects and a series of independent, distinct wrongs." *Henry*, 147 A.D.3d at 601.

---

[11] Plaintiff's trade libel claim would still be untimely even if it accrued in 2023 because the relevant statute of limitations is one year. *Supra* p. 26.

Here, what Plaintiff alleges is that, in 2023, it experienced "continuing effects" of Google's 2021 enforcement, not a "distinct wrong": Plaintiff claims that, in 2023, it attempted to reupload and monetize its assets (including ones that had already appeared in prior 2021 YouTube videos, *supra* p. 6 n.6) on the Content ID system through a different distributor, Venice Music, after which Google again applied enforcement flags against those assets. *SocialRyse II* Compl. ¶¶ 18, 21, 23. Plaintiff's own allegations in *SocialRyse I* explicitly tied the demonetization of its assets in 2023 to Google's initial enforcement in 2021, as Plaintiff alleged that its 2023 communications with Venice Music were what "revealed both Defendants' role in the original termination" in 2021 "and the mechanism of Plaintiff's ongoing exclusion." *SocialRyse I Compl.* ¶¶ 41, 42, 44.[12] Plaintiff cannot simply reset the statute of limitations for its claims by signing up with a new distributor and attempting again to monetize assets that were previously demonetized through another distributor. *Yip*, 2004 WL 2202594, at *5 ("the fact that the plaintiff's ongoing protests, objections, requests for reconsideration, and persistent demands for administrative and judicial review have caused the dispute to linger to the present day" "is not sufficient to find a continuing violation"). Nor can Plaintiff avoid the statute of limitations in this case by simply omitting to mention its own admission in *SocialRyse I* that its alleged harms in 2023 are a "continual ill effect from" a "single violation" in 2021. *New York v. Niagara Mohawk Power Corp.*, 263 F. Supp. 2d 650, 660 (W.D.N.Y. 2003). Plaintiff's claims should be dismissed as untimely. *Id.*

[12] As this Court held, Plaintiff alleges it knew of Google's enforcement actions much earlier, in 2021, and "the mere discovery of corroborating evidence that might enhance a plaintiff's ability to prevail as to its cause of action" will not "suffice to toll the statute of limitations applicable to a claim about which a plaintiff had sufficiently complete notice earlier." *SocialRyse I*, 2026 WL 2583089, at *8.

Plaintiff's various arguments otherwise are unavailing. Plaintiff's disclaimer that it "does not in this action assert any claim arising from conduct occurring in any pre-May-2023 distributor relationship," *SocialRyse II* Compl. ¶ 54, does not salvage its claims. *Andrew Greenberg, Inc. v. Svane, Inc.*, 36 A.D.3d 1094, 1099 (N.Y. App. Div. 2007) (dismissing claim as time-barred where "allegations in complaint" "necessarily imply that plaintiff was damaged by the tortious interference" three years prior to filing); *Direnna v. Christensen*, 57 A.D.3d 408, 408 (N.Y. App. Div. 2008) ("Plaintiff may not avoid the applicable four-year statute of limitations by amending his complaint to withdraw his claim for earlier months of rent overcharge.").

And New York law forecloses Plaintiff's argument that its claims are timely simply because it "continues to accrue financial injury on a daily basis." *SocialRyse II* Compl. ¶ 51. The statute of limitations does not reset on the sole basis that the plaintiff continues to feel the effects of an earlier action from 2021, *SocialRyse I*, 2026 WL 2583089, at *7 ("Plaintiff does not dispute that defendants committed each tort in 2021 and caused plaintiff to suffer damages that year."). *Commack,* 270 A.D.2d at 688–89 ("The mere fact that claimants may continue to suffer damage to their reputation does not alter the fact that the Department's unlawful conduct, if any, occurred five years before the claim was filed."); *Red Mountain Med. Holdings, Inc. v. Brill*, 2024 WL 1005561, at *1 (2d Cir. Mar. 8, 2024) ("The inferior deal that Red Mountain eventually accepted from another firm in July 2017 merely provides a measure of its damages; it does not signify the date that Red Mountain was first injured."); *Spinap Corp.*, 302 A.D.2d at 588 ("it does not avail the plaintiff to argue that Cafagno continued to solicit its customers up until the time of the filing of the complaint"); *Ugo-Alum v. New York State Dep't of Motor Vehicles,* 2024 WL 3553168, at *14 (S.D.N.Y. July 26, 2024) (no continuing violation where the supposed continuing violation stemmed from "the allegedly improper suspension of their driving privileges"); *Smith v. City of*

*New York*, 664 F. App'x 45, 47 (2d Cir. 2016) (no continuing violation for continued placement on a no-hire list). Were the law otherwise, the statute of limitations would be rendered meaningless because a plaintiff could restart the limitations period anew by making the bare allegation that it continues to experience effects from its prior injury. *Niagara Mohawk Power Corp.*, 263 F. Supp. 2d at 661. Absent any allegations of an independent and distinct wrong causing new injury, Plaintiff's claims accruing in 2021 are time-barred.

Finally, none of Plaintiff's time-barred state-law causes of actions can be salvaged by the continuing tort doctrine. *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 910 (S.D.N.Y. 2016) (tortious interference with prospective economic advantage); *Martin v. New Am. Cinema Grp., Inc.*, 2023 WL 2024672, at *9 (S.D.N.Y. Feb. 15, 2023) (trade libel); *Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217, 227 (S.D.N.Y. 2013) (unfair competition).

## CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiff's complaint with prejudice.

Dated: September 4, 2026

Respectfully submitted,

*/s/ Erin J. Morgan*

Jeannie S. Rhee (*pro hac vice*)
**DUNN ISAACSON RHEE LLP**
401 Ninth Street, NW
Washington, DC 20004
Telephone: (202) 240-2900
jrhee@dirllp.com

Erin J. Morgan
**DUNN ISAACSON RHEE LLP**
11 Park Place
New York, NY 10007

Telephone: (202) 240-2900
emorgan@dirllp.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

**CERTIFICATE OF SERVICE**

I, Erin J. Morgan, hereby certify that a copy of the foregoing Memorandum of Law in Support of the Defendants' Motion to Dismiss the Complaint, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 4, 2026.

Dated: September 4, 2026

*/s/ Erin J. Morgan*

Erin J. Morgan
New York, New York